[No. D025295. Fourth Dist., Div. One. Feb. 27, 1998.]

JAMES LENANE, Plaintiff and Appellant, v.
CONTINENTAL MARITIME OF SAN DIEGO, INC., Defendant and
Respondent.

**COUNSEL**

Tosdal, Levine, Smith & Steiner, Thomas Tosdal, Ann M. Smith and Fern M. Steiner for Plaintiff and Appellant.

Roy D. Axelrod, Littler, Mendelson, Fastiff, Tichy & Mathiason, Margaret C. Bell and James J. McMullen for Defendant and Respondent.

**OPINION**

**NARES, J.**—Plaintiff James Lenane, a sheet metal mechanic who was employed by defendant Continental Maritime of San Diego, Inc. (CMSD), and performed ship repair work, suffered the amputation of three fingers in an industrial accident involving a power press machine. Lenane filed claims for workers' compensation benefits under both the California Workers'

Compensation Act[1] (CWCA) and the Longshore and Harbor Workers' Compensation Act[2] (LHWCA).

Lenane also filed a tort action for damages against CMSD under California Labor Code sections 3602, subdivision (a) and 4558, which provide an exception to the exclusive remedy provision of the CWCA when an employee is injured as a result of the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press. A similar exception is not found in the LHWCA.

Claiming Lenane's tort action is preempted and barred by the supremacy clause of the federal Constitution and the exclusive remedy provision of the LHWCA (33 U.S.C. § 905(a)), CMSD brought a motion for summary judgment. The court agreed and granted summary judgment in favor of CMSD.

Lenane appeals, contending the court erred in granting summary judgment because Congress, in amending the LHWCA in 1972 to extend federal workers' compensation jurisdiction inland to cover shore-based maritime workers such as himself, intended to supplement rather than supplant state remedies; his cause of action under Labor Code section 4558 does not clearly conflict with the LHWCA; and thus his tort action against CMSD is not barred by the exclusive remedy provision of the LHWCA. We agree for reasons we shall discuss. Accordingly, we reverse the judgment.

FACTUAL BACKGROUND

The material facts are undisputed. Lenane was employed by CMSD as a sheet metal mechanic at CMSD's shipyard, which is located on the waterfront of the San Diego Bay. CMSD is engaged exclusively in the business of ship repair and related work, and Lenane spent all of his work time at CMSD performing this work. When Lenane was not working aboard vessels, he worked in the sheet metal shop at the CMSD shipyard.

On June 2, 1994, while Lenane was working for CMSD in the sheet metal shop bending sheet metal for vents, his left hand was crushed by a power press resulting in the partial or complete amputation of three fingers. Lenane filed a claim for California workers' compensation benefits under the CWCA, and began to receive temporary total disability and vocational rehabilitation benefits.

In July 1994 Lenane filed an application for adjudication with the California Workers' Compensation Appeals Board. He later filed a claim for

---

[1] Labor Code section 3200 et seq.
[2] 33 United States Code section 901 et seq.

federal workers' compensation benefits under the LHWCA. Through its workers' compensation carrier, CMSD began paying LHWCA benefits to Lenane retroactive to the date of his injury. Under the LHWCA, the weekly benefit increased $21.29 from the state benefit of $336 to the federal benefit of $357.29.

### PROCEDURAL BACKGROUND

#### A. *Lenane's action against CMSD under Labor Code section 4558*

In February 1995, Lenane filed a complaint for damages against his former employer (CMSD), Dreis & Krump Manufacturing Co. (the manufacturer of the press machine), and Meyer Machinery (the distributor of the machine). The only cause of action alleged against CMSD was the third cause of action under Labor Code section 4558,[3] which authorizes an industrially injured employee in California to sue his or her employer for damages if the employee is injured as a result of the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press.

In his section 4558 cause of action against CMSD, Lenane alleged (among other things) that CMSD was his employer within the meaning of subdivision (a)(1) of section 4558; the mechanical press brake that injured him was a power press within the meaning of subdivision (a)(4) of section 4558; the manufacturer of the press brake conveyed to CMSD in written materials that it required the attachment of point of operation guards for the press brake; CMSD knowingly failed to install point of operation guards on the press brake under conditions it knew would create a probability of serious injury; and Lenane was seriously injured by CMSD's knowing failure to install point of operation guards on the press brake.

CMSD answered Lenane's complaint and alleged numerous affirmative defenses, including the defense that Lenane's section 4558 cause of action was barred by the exclusive remedy provision of the LHWCA.[4]

#### B. *CMSD's motion for summary judgment*

Relying on the federal preemption affirmative defense pleaded in its answer, CMSD brought a motion for summary judgment on the ground Lenane's section 4558 cause of action was preempted and barred by the

---

[3]Subsequent unattributed references to section 4558 are to Labor Code section 4558.
[4]See 33 United States Code section 905(a).

exclusive remedy provision of the LHWCA, 33 United States Code section 905(a)[5]. CMSD maintained that federal workers' compensation benefits were Lenane's exclusive remedy under section 905(a), and his state cause of action for damages under section 4558 was in direct conflict with section 905(a). The court agreed and granted summary judgment in favor of CMSD.

### STANDARD OF REVIEW

■ In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court. (*Branco* v. *Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment. (*Lopez* v. *University Partners* (1997) 54 Cal.App.4th 1117, 1121-1122 [63 Cal.Rptr.2d 359].)

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

Here, the trial court granted summary judgment in favor of CMSD solely upon the basis of its interpretation of statutory and case law applied to undisputed material facts. ■ As we stated in *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624], "[i]t is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal. [Citation.] Accordingly, we are not bound by the trial court's interpretation."

### DISCUSSION

■ This appeal presents an issue of law of first impression: whether the exclusive remedy provision of the federal LHWCA set forth in section 905(a), preempts and bars an industrially injured, shore-based maritime employee's statutory cause of action for tort damages authorized by specified provisions of the CWCA (specifically, Lab. Code, §§ 3602, subd. (a), and 4558) when the employee's injury was allegedly caused by the employer's knowing removal of, or knowing failure to install, a point of operation

---

[5]Subsequent unattributed references to section 905(a) are to 33 United States Code section 905(a).

guard on a power press. We conclude the exclusive remedy provision of the LHWCA does not preempt a cause of action for damages under section 4558 because (1) Congress, in amending the LHWCA in 1972 to extend federal workers' compensation jurisdiction inland to cover shore-based maritime employees, intended to supplement rather than supplant state remedies; and (2) such cause of action is consistent with Congress's intent to aid maritime laborers, and thus does not clearly conflict with federal law. Accordingly, we conclude the court erred in granting summary judgment in favor of CMSD.

## I. *Principles of Federal Preemption*

Because this appeal involves the issue of federal preemption of California workers' compensation legislation, we begin our analysis by reviewing the law governing federal preemption. ■ In *Schneidewind* v. *ANR Pipeline Co.* (1988) 485 U.S. 293, 299-300 [108 S.Ct. 1145, 1150-1151, 99 L.Ed.2d 316], the United States Supreme Court discussed the applicable principles which guide our analysis: "A pre-emption question requires an examination of congressional intent. [Citation.] Of course, Congress explicitly may define the extent to which its enactments pre-empt state law. [Citation.] In the absence of explicit statutory language, however, Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose.' *Rice* v. *Santa Fe Elevator Corp.* [(1947)] 331 U.S. 218, 230 . . . . Finally, even where Congress has not entirely displaced state regulation in a particular field, *state law is pre-empted when it actually conflicts with federal law. Such a conflict will be found* ' "when it is impossible to comply with both state and federal law, [citation], or *where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress* [citation]." ' [Citations.]" (Italics added.)

■ In *Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [112 S.Ct. 2608, 2617, 120 L.Ed.2d 407], the high court also explained that its respect for the "historic police powers of the States" underlies its reluctance to infer preemption in ambiguous cases: "Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' [Citation.] . . . Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' [Citation.]

Accordingly, ' "[t]he purpose of Congress is the ultimate touchstone" ' of pre-emption analysis. [Citations.]" The high court described this reluctance to infer·preemption in ambiguous cases as a "presumption against the pre-emption of state police power regulations." (505 U.S. at p. 518 [112 S.Ct. at p. 2618].) In a separate concurring and dissenting opinion in *Cipollone* on behalf of himself and two other justices, Justice Blackmun explained that this presumption against preemption is based on the high court's respect for state sovereignty and principles of federalism.[6] (*Id.* at p. 533 [112 S.Ct. at p. 2626] (conc. and dis. opn. of Blackmun, J.).)

■ The Supreme Court has admonished that "[e]ven though Congress has acted in the admiralty area, state regulation is permissible, absent a *clear conflict with the federal law*." (*Askew* v. *American Waterways Operators, Inc.* (1973) 411 U.S. 325, 341 [93 S.Ct. 1590, 1600, 36 L.Ed.2d 280], italics added.)

## II. *Statutory Frameworks Under the CWCA and LHWCA*

To determine whether the exclusive remedy provision of the LHWCA preempts Lenane's section 4558 cause of action for damages against his former employer CMSD, we must first briefly discuss the CWCA and LHWCA workers' compensation schemes, the section 4558 exception to the exclusive remedy provision of the CWCA, and the 1972 amendments to the LHWCA which extended federal LHWCA jurisdiction inland to cover certain shore-based maritime workers such as Lenane.

### A. *CWCA and the exclusive remedy rule*

■ With certain statutory and judicial exceptions, a compensation claim under the CWCA provides the exclusive remedy against an employer for a work-related injury or death. (*Bonner* v. *Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 1023, 1032 [275 Cal.Rptr. 337].) "The legal theory supporting this exclusive remedy provision is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for the work-related personal injuries or death without regard to fault in exchange for limitations on the amount of that liability, while the employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of work-related injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. According to this legislative

---

[6]Although Justice Blackmun, joined by Justices Kennedy and Souter, dissented from another portion of the majority's opinion in *Cipollone*, he stated, "I agree with the Court's exposition . . . of the underlying principles of pre-emption law . . . ." (*Cipollone* v. *Liggett Group, Inc.*, *supra*, 505 U.S. at p. 531 [112 S.Ct. at p. 2625] (conc. and dis. opn. of Blackmun, J.).)

'quid pro quo,' the exclusive compensation law remedy supersedes common law and statutory remedies in the employment field and creates a different standard of rights and obligations in place of all prior rights and duties." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1997) § 11.01[1], pp. 11-8 to 11-9, fns. omitted.)

This CWCA exclusive remedy rule is codified in Labor Code section 3602, subdivision (a), which provides in part: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and *4558*, the sole and exclusive remedy of the employee . . . ." (Italics added.)

B.  *Section 4558 exception to the CWCA exclusive remedy rule*

In enacting section 4558,[7] the California Legislature created an exception to the CWCA workers' compensation exclusive remedy rule in certain cases involving the noninstallation of power press guards. (*Uriarte* v. *United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 782-783 [59 Cal.Rptr.2d 332].) One commentator has explained that section 4558 "creates an exception to the exclusive remedy rule in cases when an employer's removal of or failure to install a point of operation guard on a power press causes the injury or death of an employee. Thus the injured employee may bring a civil action for damages against the employer when the injury is proximately caused by the employer's knowing removal of or failure to install the power press guard and this removal or noninstallation is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 11.02[5][a], p. 11-34, fns. omitted.)

As we have noted, section 4558 is expressly referenced in Labor Code section 3602, subdivision (a), the section which sets forth the exclusive remedy provision of the CWCA. Thus, section 4558 is an integral part of the California workers' compensation scheme.

The Court of Appeal in *Ceja* v. *J. R. Wood, Inc.* (1987) 196 Cal.App.3d 1372, 1377 [242 Cal.Rptr. 531], explained the purpose of section

---

[7]Section 4558 provides in part: "An employee . . . may bring an action at law for damages against the employer where the employee's injury . . . is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury . . . ." But it also provides that the employer will not be liable "absent proof that the manufacturer designed, installed, required, or otherwise provided by specification for the attachment of the guards and conveyed knowledge of the same to the employer . . . ." (§ 4558, subds. (b) and (c).)

4558: "*The obvious legislative intent and purpose in section 4558 is to protect workers from employers who wilfully remove or fail to install appropriate guards on large power tools.* Many of these power tools are run by large mechanical motors or hydraulically. (Cal. Admin. Code, tit. 8, § 4188.) These sorts of machines are difficult to stop while they are in their sequence of operation. Without guards, workers are susceptible to extremely serious injuries. For this reason, the Legislature passed section 4558, subdivision (b), which subjects employers to legal liability for removing guards from powerful machinery where the manufacturer has designed the machine to have a protective guard while in operation." (Italics added.) ▮▮▮ Thus, for purposes of our federal preemption analysis in the present appeal, we construe the California Legislature's enactment of section 4558 as an exercise of state police power for the purpose of protecting the health and safety of workers who use a type of machinery known as a "power press," which is defined in section 4558, subdivision (a)(4), as "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products."

## C. *LHWCA*

The LHWCA,[8] enacted in 1927, is a workers' compensation statute which created a federal system of no-fault compensation in lieu of tort damages for a class of workers commonly known as "longshoremen," shore-based workers who perform a variety of tasks for, on, and around vessels. (1 Schoenbaum, Admiralty and Maritime Law (2d ed. 1994) § 7-1, pp. 371-373.) Although at that time every state in the United States had a workers' compensation law, longshore workers were excluded from coverage under these state laws because of the maritime nature of their employment.[9] With the enactment of the LHWCA, "[f]ederal and state law were thus linked together to provide theoretically complete coverage for maritime laborers." (*Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at p. 718 [100 S.Ct. at p. 2435].)

### 1. *Two-prong test for coverage under the LHWCA*

To be covered under the LHWCA, a maritime employee must satisfy both a geographic "situs" test (33 U.S.C. § 903(a)) and an occupational "status"

---

[8]The LHWCA is codified as amended at 33 United States Code sections 901-950.

[9]The history underlying the enactment of the LHWCA is discussed in detail in *Sun Ship, Inc.* v. *Pennsylvania* (1980) 447 U.S. 715 [100 S.Ct. 2432, 65 L.Ed.2d 458], and need not be repeated here. For purposes of the present appeal, we note only that in 1917 the United States Supreme Court in *Southern Pacific Co.* v. *Jensen* (1917) 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086], declared that the states were constitutionally barred from applying their workers' compensation systems to maritime injuries, and thus interfering with the federal policy of a uniform maritime law. (See *Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at p. 717 [100 S.Ct. at p. 2435].)

test (33 U.S.C. § 902(3)). Because Lenane and CMSD agree that Lenane's claim for workers' compensation is covered under both the CWCA and the LHWCA, and because the two-prong test for LHWCA coverage is discussed at length elsewhere[10] and is not at issue in the present appeal, we do not discuss the test in detail here.

### 2. *Exclusivity of the LHWCA, and judicial creation of concurrent federal and state workers' compensation jurisdiction*

Section 905(a) sets forth an exclusive remedy provision which specifies that LHWCA benefits are the exclusive remedy against an employer who is responsible for them.[11] Although a literal reading of section 905(a) would indicate that it bars all other remedies, the LHWCA does not bar all state remedies against the employer. (*Peter* v. *Hess Oil Virgin Islands Corp., supra*, 903 F.2d at p. 943.)

Following the Supreme Court's *Jensen* decision in 1917 (discussed, *ante*, fn. 9), and the enactment of the LHWCA in 1927 which linked federal and state workers' compensation law to provide theoretically complete coverage for maritime employees, it became clear that ". . . the boundary at which state remedies gave way to federal remedies was far from obvious in individual cases." (*Sun Ship, Inc.* v. *Pennsylvania, supra*, 447 U.S. at p. 718 [100 S.Ct. at p. 2435].) "As a result, the injured worker was compelled to make a jurisdictional guess before filing a claim; the price of error was unnecessary expense and possible foreclosure from the proper forum by statute of limitations. [Citation.]" (*Ibid.*)

To remedy this so-called "*Jensen* line" jurisdictional problem, the Supreme Court in *Davis* v. *Department of Labor* (1942) 317 U.S. 249, 256 [63 S.Ct. 225, 229, 87 L.Ed. 246] "determined that the border between federal and state workers' compensation schemes was less a line than a 'twilight zone,' in which 'employees must have their rights determined case by case . . .' [citation]." (*Sun Ship, Inc.* v. *Pennsylvania, supra*, 447 U.S. at p. 718 [100 S.Ct. at p. 2435].) Within this "twilight zone," *Davis* and other court decisions established a regime of concurrent jurisdiction between the LHWCA and state workers' compensation laws. (447 U.S. at pp. 718-719 [100 S.Ct. at pp. 2435-2436].)

---

[10]See, for example, *Peter* v. *Hess Oil Virgin Islands Corp.* (3d Cir. 1990) 903 F.2d 935, 938; 1 Schoenbaum, Admiralty and Maritime Law, *supra*, section 7-2, pages 373-388.

[11]Section 905(a) provides in part: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury . . . ."

The Supreme Court has summarized the pre-1972 jurisprudence as follows: "Before 1972, . . . marine-related injuries fell within one of three jurisdictional spheres as they moved landward. At the furthest extreme, *Jensen* commanded that nonlocal maritime injuries fall under the LHWCA. 'Maritime but local' injuries 'upon the navigable waters of the United States,' . . . could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—albeit within the range of federal admiralty jurisdiction—were remediable only under state law. [Citation.]" (*Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at p. 719 [100 S.Ct. at p. 2436].)

### 3. *1972 amendments extending LHWCA jurisdiction inland and reaffirming concurrent federal and state workers' compensation jurisdiction*

In 1972, Congress amended the LHWCA to extend its coverage inland beyond the shoreline of the traditional navigable waters of the United States to specific adjoining areas, such as piers, dry docks, and "other adjoining area[s] customarily used by an employer in loading, unloading, *repairing,* dismantling, or building a vessel."[12] (See 33 U.S.C. § 903(a), italics added.)

### III. *Analysis*

We turn now to the issue of whether the exclusive remedy provision of the LHWCA preempts and bars Lenane's statutory cause of action for damages under section 4558 which (as we discussed, *ante*) is an integral part of the CWCA and was enacted by the California Legislature in an exercise of its state police powers for the protection of the health and safety of workers in California.

### A. *The 1972 LHWCA amendments, which extended federal LHWCA jurisdiction inland, did not preempt state CWCA remedies in the "twilight zone" of concurrent LHWCA and CWCA jurisdiction*

In *Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. 715, the Supreme Court squarely addressed the issue of "whether a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the [LHWCA] as amended in 1972." (*Id.* at p. 716 [100 S.Ct. at p. 2434].) After reviewing the express provisions of the LHWCA and its legislative

---

[12]Congress also substantially increased the level of compensation available under the LHWCA, and eliminated the so-called "unseaworthiness remedy" under which a longshore employee injured while loading or unloading vessels could pursue a strict liability unseaworthiness award against the vessel upon which he or she was injured. (*Peter* v. *Hess Oil Virgin Islands Corp., supra,* 903 F.2d at pp. 947-948.)

history, the high court held that it may. (*Ibid.*) In so holding, the court not only stated that the 1972 landward extension of federal LHWCA jurisdiction "supplements, rather than supplants, state compensation law," and that the LHWCA as amended does not preempt "state workers' remedies," but also reaffirmed the continued existence of a "twilight zone"[13] in which there is concurrent LHWCA and state workers' compensation law jurisdiction: "Absent any contradicting signal from Congress, the principles of *Davis* v. *Department of Labor*, *supra*[, 317 U.S. 249], and of *Calbeck* v. *Travelers Insurance Co.* [(1962)] 370 U.S. 114 [82 S.Ct. 1196, 8 L.Ed.2d 368], direct the conclusion that *the 1972 extension of federal jurisdiction supplements, rather than supplants, state compensation law*. Given that the pre-1972 [LHWCA] ran concurrently with state remedies in the 'maritime but local' zone, it follows that the post-1972 expansion of the [LHWCA] landward would be concurrent as well. . . . [¶] *The language of the 1972 amendments cannot fairly be understood as pre-empting state workers' remedies from the field of the LHWCA . . . .*" (*Sun Ship, Inc.* v. *Pennsylvania*, *supra*, 447 U.S. at pp. 719-720 [100 S.Ct. at p. 2436], italics added.)

The high court in *Sun Ship* explained that the legislative history of the 1972 LHWCA amendments made clear that Congress understood that this concurrent jurisdiction in the "twilight zone" might result in an injured maritime employee receiving state benefits that would be superior to federal benefits available under the LHWCA: "[T]he disparities which Congress had in view in amending the LHWCA lay primarily in the paucity of relief under *state* compensation laws. The thrust of the amendments was to 'upgrade the benefits.' [Citations.] Concurrent jurisdiction for state and federal compensation laws is in no way inconsistent with this policy of raising awards to a federal minimum. . . . [¶] To be sure, if state remedial schemes are more generous than federal law, concurrent jurisdiction could result in more favorable awards for workers' injuries than under an exclusively federal compensation system. But we find no evidence that Congress was concerned about a disparity between adequate federal benefits and *superior* state benefits. . . ." (*Sun Ship, Inc.* v. *Pennsylvania*, *supra*, 447 U.S. at pp. 723-724 [100 S.Ct. at pp. 2438-2439], original italics, fns. omitted.) The Supreme Court in *Sun Ship* concluded by stating that "[t]he legislative policy animating the LHWCA's landward shift was remedial; the amendments' framers acted out of solicitude for the workers. [Citations.]" (*Id.* at pp. 725-726 [100 S.Ct. at p. 2439].)

Thus, the Supreme Court's decision in *Sun Ship* establishes that the 1972 amendments to the LHWCA, which extended federal LHWCA jurisdiction

---

[13]One commentator has stated that "the 'new' twilight zone under *Sun Ship* comprehends not only the landward area newly covered by the 1972 amendments but also the same pre-1972 navigable waters 'old' twilight zone." (1 Schoenbaum, Admiralty and Maritime Law, *supra*, § 7-4, p. 390, fn. 9.)

inland, did not preempt all state CWCA remedies in the "twilight zone" areas in which there is concurrent LHWCA and CWCA jurisdiction and overlapping federal and state workers' compensation coverage for maritime employees such as Lenane. Rather, Congress acted out of "solicitude" for maritime workers with intent to aid them by continuing to recognize the judicially created regime of concurrent jurisdiction, extending LHWCA jurisdiction inland, and "upgrading the benefits" to a federal *minimum*, not a federal maximum, for covered maritime employees who suffer work-related injuries in the "twilight zone" of concurrent jurisdiction. (*Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at pp. 725-726 [100 S.Ct. at p. 2439].) Congress fully understood that in some cases state remedies may be superior to federal remedies under the LHWCA. (*Id.* at p. 724 [100 S.Ct. at pp. 2438-2439].)

The Supreme Court in *Sun Ship* did not address the specific preemption question we must decide in the present appeal. We now turn to that issue.

B.  *The exclusive remedy provision of the LHWCA does not preempt an industrially injured maritime employee's CWCA cause of action for damages under section 4558*

CMSD contends the exclusive remedy provision of the LHWCA[14] preempts the exception to the CWCA exclusive remedy rule which allows a tort action under section 4558. Citing *Peter* v. *Hess Oil Virgin Islands Corp., supra,* 903 F.2d at page 950, CMSD contends that the section 4558 damages remedy conflicts with the exclusive remedy provision of the LHWCA, and thus " 'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' " We disagree with these contentions.

We begin by noting that *Peter* v. *Hess Oil Virgin Islands Corp., supra,* 903 F.2d 935, is factually distinguishable in that it involved a Virgin Islands *common law negligence* action, not a Virgin Islands workers' compensation remedy, brought by an injured longshore worker against his employer. (*Id.* at p. 937.) Noting that Congress, in enacting the LHWCA, "intended that compensation, not tort damages, were to be the primary source of relief for workplace injuries for longshoremen against their employers" (*id.* at p. 952), the federal Court of Appeals for the Third Circuit held that the longshore worker's Virgin Islands common law tort action was barred because it obstructed the "congressional policies advanced by LHWCA . . . ." (*Id.* at p. 937.)

Here, in contrast, Lenane's cause of action against his former employer CMSD is not a state common law tort action. As we have discussed,

---

[14]Section 905(a).

Lenane's section 4558 cause of action for damages is a state workers' compensation remedy created by the California Legislature in the exercise of its police power for the purpose of protecting the health and safety of workers who use power press machines which, without appropriate guards, can cause extremely serious injuries. (*Ceja* v. *J. R. Wood, Inc., supra*, 196 Cal.App.3d at p. 1377.) Section 4558 creates an exception to the CWCA workers' compensation exclusive remedy rule in certain cases involving the noninstallation of power press guards. (*Uriarte* v. *United States Pipe & Foundry Co., supra*, 51 Cal.App.4th at pp. 782-783.) That this remedy is an integral part of California's workers' compensation scheme is established by the fact that section 4558 is expressly referenced in section 3602, subdivision (a), the section which sets forth the exclusive remedy provision of the CWCA.

CMSD's other principal case authorities, *Rosetti* v. *Avondale Shipyards, Inc.* (5th Cir. 1987) 821 F.2d 1083 ("simple tort negligence" action under state law is barred by the LHWCA exclusive remedy provision) and *Ghotra* v. *Bandila Shipping, Inc.* (9th Cir. 1997) 113 F.3d 1050 (federal maritime law preempts a wrongful death claim under the California wrongful death statute in the case of a marine surveyor killed while inspecting a vessel's hold), are factually distinguishable for similar reasons.

We are mindful of the well-established principles which must guide our federal preemption analysis. As we have discussed, *ante*, the United States Supreme Court has held that state law is preempted when it actually conflicts with federal law, and such a conflict will be found where the state law " ' "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress[] [citation]." ' " (*Schneidewind* v. *ANR Pipeline Co., supra*, 485 U.S. at p. 300 [108 S.Ct. at p. 1150].)

However, the Supreme Court has also held that " ' "[t]he purpose of Congress is the ultimate touchstone" ' " of pre-emption analysis. [Citations.]" (*Cipollone* v. *Liggett Group, Inc., supra*, 505 U.S. at p. 516 [112 S.Ct. at p. 2617].) Based on its respect for state sovereignty and principles of federalism, the high court in ambiguous cases involving federal preemption issues recognizes and applies a "presumption against the pre-emption of state police power regulations." (*Id.* at p. 518 [112 S.Ct. at p. 2618].) Under this presumption against preemption, "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' [Citation.]" (*Id.* at p. 516 [112 S.Ct. at p. 2617].)

We are not convinced it was the "clear and manifest purpose of Congress" in amending the LHWCA in 1972 to preempt a state workers' compensation

remedy such as Lenane's section 4558 cause of action which was created by the Legislature in the exercise of its state police power to aid workers, including ship repair workers such as Lenane, by protecting them from harm in the use of a specific type of machinery (power presses). On the contrary, the Supreme Court in *Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at pages 723-724 [100 S.Ct. at pages 2438-2439], explained that the legislative history of the 1972 LHWCA amendments establishes that Congress understood that concurrent jurisdiction in the so-called "twilight zone" of overlapping LHWCA and state workers' compensation coverage might result in an injured maritime employee receiving state benefits that would be superior to federal benefits available under the LHWCA.

Were we to agree with CMSD's position that the exclusive remedy provision of the LHWCA preempts an industrially injured California maritime employee's CWCA remedy under section 4558, the net result would be to reduce the level of state workers' compensation benefits available to that employee and all other similarly situated maritime employees. We are persuaded such a result would " ' "stand[] as an obstacle to the accomplishment of the full purposes and objectives of Congress[] [citation]." ' " (*Schneidewind* v. *ANR Pipeline Co., supra,* 485 U.S. at p. 300 [108 S.Ct. at p. 1150].) As we have discussed, *ante,* it was the intent of Congress in extending LHWCA jurisdiction inland in 1972 to supplement, rather than supplant or preempt, state workers' compensation benefits available to maritime employees who suffer work-related injuries in the "twilight zone" of concurrent LHWCA and state workers' compensation law jurisdiction. (*Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at pp. 719-720 [100 S.Ct. at pp. 2435-2436].)

California has a legitimate interest in assuring the enforcement of its workers' compensation laws, including the section 4558 exception to the CWCA exclusive remedy rule, with respect to covered injuries sustained within its jurisdiction. In this regard, we agree with the observation of one commentator that because the Supreme Court's jurisprudence has given "free rein" to a covered "twilight zone" worker's choice to pursue his or her remedies under state law, "as a practical matter the determination whether the state worker's compensation law applies will be up to the state not federal courts. [Citations.]" (1 Schoenbaum, Admiralty and Maritime Law, *supra,* § 7-4, p. 390, fn. 9.)

In conclusion, we hold that the exclusive remedy provision of the federal LHWCA does not preempt an industrially injured, shore-based maritime employee's CWCA cause of action for damages under section 4558.

## DISPOSITION

We reverse the judgment and remand this case to the trial court for further proceedings consistent with this opinion.

Lenane shall recover his costs on appeal from CMSD.

Work, Acting P. J., and McIntyre, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 20, 1998. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.