[No. A085214. First Dist., Div. Five. July 2, 1999.]

PAUL HOFFMAN, as Co-executor, etc., et al., Plaintiffs and Appellants,
v.
KATHLEEN CONNELL, as Controller, etc., Defendant and Respondent.

**COUNSEL**

Anderson Zeigler Disharoon Gallagher & Gray, Kirt F. Zeigler and Daniel E. Post for Plaintiffs and Appellants.

Geoffrey F. Margolis and Richard J. Chivaro for Defendant and Respondent.

## OPINION

**JONES, P. J.**—The executors of the estate of Constance T. Cummings contend the trial court erred when it ruled they were obligated to pay California estate tax on property which Ms. Cummings did not own. We agree and will reverse the judgment entered by the trial court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Constance T. Cummings (Connie) was married to Robert S. Cummings (Robert) who was a resident of St. Thomas, the United States Virgin Islands. It was a second marriage for both of them. Robert had a son named Donald from a prior marriage.

Robert died on November 3, 1988. His will established the Robert S. Cummings Trust. The trust corpus was $2 million in securities, held by an investment firm located in New York, that Robert owned as his separate property. The will directed the trustees to invest the corpus and to pay the net income to Connie at least annually. The trustees were given the discretion to pay principal to Connie if they deemed it advisable, but no such payments were ever made. Connie did not have the power to change the terms of the trust, to remove the trustees, or to appoint or withdraw principal during her lifetime or upon her death. According to the terms of the trust, upon Connie's death, the trustees were obligated to pay the remaining principal to Donald.

The trust was set up as a "QTIP" trust under federal tax law. (See 26 U.S.C. § 2056(b)(7).) QTIP stands for "qualified terminable interest property." (26 U.S.C. § 2056(b)(7)(B)(i).) The term refers to property which (1) passes from the decedent, (2) in which a surviving spouse has a qualifying income for life, and (3) to which an election is made on the decedent's federal tax return. (26 U.S.C. § 2056(b)(7)(B)(i)(I) through (b)(7)(B)(i)(III).) Property that qualifies as QTIP property is excluded from the decedent's gross estate for purposes of federal estate taxes. (26 U.S.C. § 2056(a) and (b)(7)(A)(i).) However QTIP property so excluded must then be included in the surviving spouse's estate for federal tax purposes when he or she dies. (See 26 U.S.C. § 2044(a).)

After Robert died, Connie moved to California, where she resided until her death on February 16, 1995. Her executors then filed federal and California estate tax returns that differed in the way they treated the property that had been placed into the QTIP trust. The federal return included the value of that property. The state return did not.

The state Controller asserted the executors should have paid estate taxes on the trust property and, accordingly, issued a notice of tax deficiency of $173,134.78. Connie's executors disputed the deficiency and filed a complaint to have it declared invalid. The parties agreed the material facts were undisputed and submitted the case to the trial court on cross-motions for summary judgment. The primary issues for the court to decide were (1) whether Connie "owned" the property that had been placed into the QTIP trust, and (2) whether those trust assets were "located" in California within the meaning of the applicable tax statutes. The court answered both of these questions in the affirmative and ruled the deficiency was proper. The executors then filed this appeal.

## II. DISCUSSION[1]

### A. *Introduction and Statutory Background*

As a general rule, there is no estate tax in California. This policy is set forth in Revenue and Taxation Code[2] section 13301, which provides, "Neither the state nor any political subdivision of the state, shall impose any gift, inheritance, succession, legacy, income, or estate tax . . . on the estate or inheritance of any person . . . by reason of any transfer occurring by reason of a death."[3] This general rule is subject to an exception which is contained in section 13302. It states, "Notwithstanding the provisions of Section 13301, whenever a federal estate tax is payable to the United States, there is hereby imposed a California estate tax equal to the portion, if any, of the maximum allowable amount of the credit for state death taxes, allowable under the applicable federal estate tax law, which is attributable to property located in . . . California. However, in no event shall the estate tax hereby imposed result in a total death tax liability to the State of California and the United States in excess of the death tax liability to the United States which would result if this section were not in effect."

The "federal estate tax" described in section 13302 is set forth in 26 United States Code section 2001. It provides, "A tax is hereby imposed on

---

[1]Our review of this case has been made more difficult because the Controller filed a defective brief. California Rules of Court, rule 15(a) provides the "statement of any matter in the record shall be supported by appropriate reference to the record." Despite this requirement, the first 13 pages of the Controller's brief, including the statements of facts, the procedural history, and a large portion of the Controller's argument, contain *no* citations to the record. The court will expect and require the Controller to comply with the Rules of Court in all future filings.

[2]Unless otherwise indicated, all section references will be to the Revenue and Taxation Code.

[3]Section 13301 was adopted through an initiative in 1982. (See Historical and Statutory Notes, 60A West's Ann. Rev. & Tax. Code (1994 ed.) § 13301, pp. 340-341.)

the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." The "credit for state death taxes" described in section 13302 is set forth in 26 United States Code section 2011(a), which states, "The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State . . . in respect of any property included in the gross estate . . . ."

The interaction between section 13302 and the federal tax statutes we have quoted results in what the parties describe as a "pickup" tax; i.e., California picks up and imposes an estate tax equal to the credit which the federal tax law allows. Section 13302 does not impose a burden in addition to that which ordinarily would be imposed by the federal estate tax. Instead, a portion of what would otherwise be paid to the federal government is paid to the state.

A decedent may leave property which is located in more than one state. When this occurs, the apportionment of the "credit for state death taxes" is governed by section 13304, which provides that when a "decedent leaves property having a situs in this state, and leaves other property having a situs in another state," the "maximum state death tax credit allowable shall be multiplied by the percentage which the gross value of property having a situs in California bears to the gross value of the entire estate subject to federal estate tax." (§ 13304, subd. (b).) In other words, the credit is calculated by multiplying the total tax credit by a fraction, the numerator of which is the "gross value of property having a situs in California" and the denominator of which is the "gross value of the entire estate subject to federal estate tax." (§ 13304, subd. (b).)

The tax imposed under section 13302 is calculated based on "property located in . . . California." (§ 13302.) Since the term "property" is defined by the Revenue and Taxation Code to mean the "real or personal property or interest therein *of a decedent* . . ." (§ 13402, italics added) two requirements are inherent in the section 13302 definition. First, to be taxable, the property must have been the decedent's property; i.e., he or she must have owned it.[4] Second, the property must be located in California.

In this case, the executors contend the trial court erred when it ruled they were required to pay the section 13302 pickup tax because Connie did not own the property in the QTIP trust, and because that property was not located in California.  ▇  Since the facts of this case are undisputed, we must consider, de novo, the parties' arguments on these issues. (*Lenane* v. *Continental Maritime of San Diego Inc.* (1998) 61 Cal.App.4th 1073, 1079

---

[4]The Controller concedes the pivotal issue is whether "the securities belonged to [Connie.]"

[72 Cal.Rptr.2d 121].) As we will discuss below, we agree Connie did not own the property in the QTIP trust. Accordingly we need not decide whether that property was located in California.

### B.  *Whether Connie Owned the Trust Corpus*

■    The parties do not try to establish definitively what law applies when determining whether Connie owned the property in the QTIP trust. Instead, they analyze whether Connie can be said to have owned the property under federal, California, or United States Virgin Islands law. We will follow the same procedure here.

### 1.  *Federal Law*

The first issue is whether Connie owned the trust property by application of federal tax law. The answer is clear. The federal tax laws are not intended to determine a party's property rights. Instead, "[s]tate law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." (*Morgan* v. *Commissioner* (1940) 309 U.S. 78, 80 [60 S.Ct. 424, 426, 84 L.Ed. 585]. See also *Helvering* v. *Stuart* (1942) 317 U.S. 154, 162 [63 S.Ct. 140, 144-145, 87 L.Ed. 154]; *Flitcroft* v. *C.I.R.* (9th Cir. 1964) 328 F.2d 449, 456.) We conclude federal tax law does not establish that Connie owned the trust assets.

The Controller has not tried to distinguish or even discuss this fundamental principle of federal tax law. Instead, she contends Connie is deemed to have owned the trust property under certain provisions of the federal tax code and the applicable regulations. Not only does this argument ignore the fact that federal tax laws are not intended to determine a party's property rights (*Morgan* v. *Commissioner, supra,* 309 U.S. at p. 80 [60 S.Ct. at pp. 425-426]), the portions of the federal tax law upon which the Controller relies do not support her argument.

The Controller first relies on 26 United States Code section 2056(b)(7)(A)(i). However, that section simply states that when a decedent places property into a QTIP trust, the property is "treated as passing to the surviving spouse" when determining how much estate tax is owed. The fact that property is "treated" as passing to the surviving spouse suggests that it does not *actually* pass to the surviving spouse. This was the conclusion of the United States Tax Court in *Mellinger* v. *Commissioner*, 112 T.C. 26 (1999) (*Mellinger*), which the Controller does not attempt to distinguish or discuss. The *Mellinger* court observed that under the Internal Revenue Code, while "[QTIP] property is 'treated as property passing from the'

surviving spouse, sec. 2044(c), and is taxed as part of the, surviving spouse's estate at death, . . . QTIP property does not actually pass to or from the surviving spouse." (*Mellinger, supra,* at p. 3921.)

The Controller also claims her argument is supported by Treasury regulation section 20.2056(b)-7(b)(iii). There is no such regulation. Assuming the Controller is in fact referring to Treasury regulation section 20.2056(b)-7(b)(1)(ii), her argument fares no better. That regulation states the term "property" in 26 United States Code section 2056(b)(7)(B)(i) "generally means the entire interest in property . . . ." (26 C.F.R. § 20.2056(b)-7(b)(1)(ii) (1998).) The fact that the word "property" generally means the entire interest in property does nothing to establish that definition is applicable under the facts of this case.

### 2. *California Law*

The next issue is whether Connie owned the trust property under California law. Again we conclude the answer is no.

█ The concept of ownership refers not to a single right, but a collection of legal rights to use and enjoy property. There are several indicia of ownership. Title is one. (See *Lowenthal* v. *Kunz* (1951) 104 Cal.App.2d 181, 183 [231 P.2d 62].) Possession is another. (See *Watwood* v. *Steur* (1949) 89 Cal.App.2d 620, 624-625 [201 P.2d 460]; see also Evid. Code, § 637 ["The things which a person possesses are presumed to be owned by him."].) The rights to transfer (see *Bias* v. *Ohio Farmers Indemnity Co.* (1938) 28 Cal.App.2d 14, 16 [81 P.2d 1057]) and to exercise control over property are also indicia of ownership. (See 51 Cal.Jur.3d, Property, § 13, pp. 24-25.)

█ Here the undisputed evidence shows that the trust corpus was $2 million in securities, held by an investment firm located in New York. The trustees were required to invest the corpus and to pay the net income to Connie at least annually. The trustees were given the discretion to pay principal to Connie if they deemed it advisable, but no such payments were ever made. Connie did not have the power to change the terms of the trust, to remove the trustees, or to appoint or withdraw principal during her lifetime or upon her death.[5] When Connie died, the trustees were obligated to pay the remaining principal to Donald.

On these facts, we have no difficulty in concluding Connie did not own the trust property under California law. Connie did not have title to the

---

[5]The Controller states Connie had "an absolute right to appropriate part of the QTIP trust corpus, which she did." The Controller has not provided a citation to support this statement; and it directly contradicts the Controller's position during the motion for summary judgment, where she said it was "undisputed" that Connie did not have the power to "appoint [trust] principal during her lifetime or upon her death." We will ignore the Controller's statement

property. Under California law, title passed to the trustees. (See *Reagh* v. *Kelley* (1970) 10 Cal.App.3d 1082, 1097 [89 Cal.Rptr. 425].) Connie did not possess or control the trust corpus. Those powers were held by the trustees. While the trustees had the authority to give principal to Connie if they deemed it advisable, they never did so. Connie did not have the right to transfer the property upon her death. Connie's deceased husband Robert had already determined that the trust corpus must be given to Donald when Connie died. In sum, while the evidence shows Connie was the income beneficiary of the trust, she had no substantial ownership rights in the trust corpus itself.

The Controller disputes this conclusion arguing that Connie's ownership of the trust property is demonstrated by the fact she received the income from the trust. While the right to receive income from property is a factor that tends to show ownership (*Boyd* v. *Oser* (1944) 23 Cal.2d 613, 620 [145 P.2d 312]), it is only one such factor. When measured against the other factors we have described, we do not find that factor controlling.

The Controller also contends Connie's ownership is demonstrated by the fact that California and federal statutes gave Connie's executors the right to recover from the trustees, any tax the executors might be obligated to pay because the trust assets are included in Connie's estate. (See Prob. Code, § 20110, subd. (b)(2)[6]; 26 U.S.C. § 2207A.[7]) However the fact that statutory reimbursement from the trustees is available tends to show that the estate would be shouldering a tax burden based on assets that Connie did not own. If Connie did own the trust assets, there would be no need for reimbursement because the tax burden would already belong to the estate.

### 3.   *United States Virgin Islands Law*

The third issue is whether Connie can be said to have owned the trust property under the law of the United States Virgin Islands.

The executors contend, and the Controller does not dispute, that the United States Virgin Islands applies the common law as is set forth in the

because it contradicts her position during the motion for summary judgment. (Cf. *City of San Diego* v. *Rider* (1996) 47 Cal.App.4th 1473, 1493 [55 Cal.Rptr.2d 422].)

[6]Probate Code section 20110, subdivision (b)(2) states, "If federal law directs the manner of proration of the federal estate tax, the California estate tax shall be prorated in the same manner."

[7]26 United States Code section 2207A(a)(1) states, "If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain property for which marital deduction was previously allowed), the decedent's estate shall be entitled to recover from the person receiving the property the amount by which [¶] (A) the total tax under this chapter which has been paid, exceeds [¶] (B) the total tax under this chapter which would have been payable if the value of such property had not been included in the gross estate."

restatements of the law. (See *McDowell* v. *Paiewonsky* (3d Cir. 1985) 769 F.2d 942, 945.) We thus turn to the Restatement of Property section 10 which provides, "The word 'owner,' as used in this Restatement, means the person who has one or more interests." This definition implies that ownership interests under the restatement can be divided; a fact that is confirmed by comment a to section 10, page 25, which states, "If the interests in question are numerous and if they are conventionally grouped under a single term, the person who has these interests is designated both in this Restatement and in general usage as the 'owner' of them . . . ." Comment b of section 10, page 25 explains that one who possesses all the various ownership interests in property is considered to be the owner of that property, "A person who has the totality of rights, powers, privileges and immunities which constitute complete property in a thing . . . is the 'owner' of the 'thing' . . . ." Comment c of section 10, page 26 explains that when the various ownership interests are divided, it can be difficult to determine who is the owner of property, "The owner may part with many of the rights, powers, privileges and immunities that constitute complete property and his relation to the thing is still termed ownership both in this Restatement and as a matter of popular usage. . . . . [¶] . . . [¶] To just what an extent . . . in the case of the ownership of a thing . . . the constituent interests can be parted with and the characteristics of 'ownership' . . . be still regarded as existing is not a matter upon which any precise rule can be laid down."

Interpreting section 10 and the comments together, we conclude the Restatement applies a definition of ownership that is similar to the one that is applied in California. In other words, the term ownership refers to a collection of legal rights. Those rights can be divided and when they are, the extent to which a party can still be considered the owner is an issue about which no "precise rule can be laid down." (Rest., Property, § 10, com. c, p. 26.)

Applying these principles, we conclude Connie would not be considered the owner of the trust property under the Restatement. Connie lacked many of the indicia of ownership; i.e., possession or the right to control the property during her lifetime or upon her death. To the extent she did possess at least one interest suggesting ownership (the right to receive income from the property), that factor is outweighed by the other factors showing she did not own the trust property. Because Connie would not be considered the owner of the trust property under the Restatement, she would not be considered the owner under the law of the United States Virgin Islands.

### 4. *Ownership Conclusion*

In sum, we conclude Connie would not be considered the owner of the trust property under federal, California, or the United States Virgin Islands

law. Since Connie did not own that property, her estate was not obligated to pay tax on it under section 13302.

### C. *Relationship Between Federal and State Law*

The Controller anticipates we would conclude Connie did not own the trust property, and she adopts a backup position. Although her argument is difficult to follow, the Controller seems to contend that since the pickup tax does not place an additional tax burden on the estate, but simply takes a portion of the credit which the federal tax law allows, California should simply rely on federal tax principles when determining whether any tax is due. We reject the argument. While the pickup tax is based on and closely related to the federal tax credit, the state can only collect that tax when it is authorized to do so under California law. As we have explained above, California law does not allow the state to collect estate tax on property which a decedent did not own. Accordingly, we decline to allow the state to act in a manner contrary to California law.[8]

### III. DISPOSITION

The judgment is reversed. The trial court is ordered to enter a new judgment in favor of the executors.

Haning, J., and Stevens, J., concurred.

---

[8]Having concluded the estate was not obligated to pay the pickup tax because Connie did not own the trust property, we need not reach the executors' further argument that it would be unconstitutional for California to impose the tax under the facts of this case.