Filed 10/21/24  Prado v. Castillo CA6

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALICIA PRADO et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MAURICIO NAVARRO CASTILLO, et al.,<br><br>    Defendants and Respondents;<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>    Real Party in Interest. | H050309<br>(Santa Clara County<br> Super. Ct. No. 19CV340410)<br><br>ORDER MODIFYING THE OPINION<br><br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed on October 18, 2024, be modified as follows:

1.  At the bottom of the signature page, after page 14 of the opinion, the case title "*Prado et al. v. A. Navarro Transport Truck et al.*" is deleted and the following is inserted in its place "*Prado et al. v. Castillo et al.*"

2.  At the bottom of the signature page, after page 17 of the concurrence, the case title "*Prado et al. v. A. Navarro Transport Truck et al.*" is deleted and the following is inserted in its place "*Prado et al. v. Castillo et al.*"

There is no change in judgment.

Date: _____          _____
                                 BAMATRRE-MANOUKIAN, ACTING P.J.


                                 _____
                                 DANNER, J.


                                 _____
                                 BROMERG, J.

*Prado et al. v. Castillo et al.*
H050309

Filed 10/18/24  Prado v. Castillo CA6 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALICIA PRADO et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MAURICIO NAVARRO CASTILLO, et al.,<br>    Defendants and Respondents;<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>    Real Party in Interest. | H050309<br>(Santa Clara County<br>Super. Ct. No. 19CV340410) |

In March 2017, Alfredo Prado Canela was working as a "spotter" at a landfill when a truck waiting to use the landfill backed onto Canela and killed him.  Canela's wife and children sued for wrongful death, and the defendants moved for summary judgment, which the trial court granted on the ground that there were no triable issues concerning breach or causation.  For the reasons explained below, we reverse and remand.

# I. BACKGROUND

## A. The Death of Alfredo Prado Canela

Alfredo Prado Canela was a lifelong employee of the John Smith Road landfill in Hollister, California. In 2015, Canela became the landfill's spotter.

At the landfill, when a truck arrives, it drives to the spotter's box, a zone protected by concrete blocks where the spotter generally stays for safety reasons, and the spotter tells the truck where to go. Before dumping their loads, trucks generally line up in a designated staging area, with the rear of the trucks facing the dumping area. If another truck is in the area, or the trash inside the landfill needs to be pushed back, trucks must wait before reversing into the dumping area. Typically, the landfill operator tells the spotter when the dumping area is ready for another truck, and the spotter tells the next truck in line that it may start reversing. The spotter gives this "go signal" to the truck by radio or hand signal.

Early on March 16, 2017, Mauricio Navarro Castillo picked up a load of scrap metal in San Jose and went to the landfill. Another truck was in the dumping area, so Castillo parked his truck in the staging area. After briefly exiting his truck, Castillo returned, put the truck into reverse, and released the brake. Almost immediately, another trucker honked. Castillo stopped his truck, exited it, and found Canela crushed behind the truck's rear axle. Canela passed away that day.

## B. The Proceedings Below

In January 2019, Canela's wife and children—Alicia Prado, Alfredo Prado, Jr., Alex Prado, and Melissa Garcia Prado (collectively, the Prado Family or Family)—sued for wrongful death, claiming general and motor vehicle negligence. The defendants included Castillo, who operates a business under the name of Navarro Transport, and Mark Lopez, both individually and doing business as Premier Transportation, the company on whose behalf Castillo was hauling scrap metal on the day that Canela died. Although several others appeared to have been sued, only Castillo, Lopez, and Premier

Transportation are relevant to this appeal, and we therefore refer to them as "Defendants."

After conducting discovery, Defendants moved for summary judgment or, alternatively, summary adjudication. They argued that Castillo "observed all trucking industry formalities" in backing up his truck, and he could not have reasonably been expected to know that Canela was in his blind spot. Defendants also argued that Canela was at fault for being outside the spotter's box and the safe zone, that Canela was not supposed to be behind Castillo's truck under the landfill operator's safety plan, and that Canela's fault was "not only comparative—but complete." (Underscoring omitted.) In support, Defendants noted that the landfill operator had a written policy that " 'spotters may not direct traffic from behind moving vehicles.' " Finally, Defendants pointed to testimony from their safety expert Paul Andersen concluding that Canela's conduct was the "root cause" of the accident that caused his death.[1]

The Prado Family filed a five-page opposition. They argued that the central issues in this case are whether Castillo was negligent in reversing his truck without a signal from Canela and whether that negligence caused Canela's death. Citing to their opposing statement of material facts, the opposition memorandum asserted that trucks at the landfill "are required to wait for a signal from the spotter letting him know that they can proceed to the dumping area to dump." The statement in turn cited deposition testimony from current and former employees of the landfill as well as the driver who was in the dumping area in front of Castillo.

In their reply, Defendants reiterated that Canela "was in a place he never should have been at the time he was run over." (Underscoring omitted.) Defendants also denied

---

[1] In addition, Defendants argued in the alternative that Navarro Transport and Premier Transportation owed no duty to ensure Canela observed safety requirements and that there is no evidence Premier Transportation caused Canela's death. Because the trial court did not reach these arguments, and Defendants have not advanced them on appeal, we do not consider them.

that Castillo was required to wait for a signal before reversing into the dumping area, citing testimony from one landfill employee and arguing that the other employees lacked sufficient knowledge of the landfill practice at the time of the accident. Defendants did not assert that Castillo received a signal authorizing him to reverse his truck.

The trial court granted summary judgment. It ruled that the Prado Family had failed to raise a triable issue concerning breach. Citing the description in Defendants' statement of undisputed material facts of the landfill's custom and the procedures that Castillo followed in reversing his truck, the court concluded that Defendants had satisfied their prima facie burden of showing that Castillo complied with the standard of care. The trial court acknowledged the Prado Family's argument that drivers were required to wait for a signal before reversing into the dumping area. However, it rejected the argument because the Family "d[id] not submit evidence demonstrating that Mr. Castillo, on the day of the incident, failed to take instructions from the spotter when operating his tractor-trailer at the landfill."

Finding that Defendants moved for summary judgment on the ground that Canela's death was not caused by Defendants, the trial court also ruled that there was no triable issue concerning causation. The court pointed to two paragraphs in Defendants' statement of undisputed material facts describing the conclusions reached by their expert based on his root cause analysis. In light of these conclusions, the trial court held Defendants had met their prima facie burden on causation. In addition, because "[t]he opposition memorandum does not direct the court to specific facts or supporting evidence addressing the element of causation," the trial court concluded that the Prado Family had failed to raise a triable issue concerning causation.

On July 27, 2022, the trial court entered judgment in favor of Defendants, and two weeks later Plaintiffs filed a timely notice of appeal.

4

## II. DISCUSSION

"The elements of a negligence cause of action are 1) the existence of a duty, 2) a breach of that duty, 3) injury to the plaintiff caused by the defendant's breach, and 4) actual damages." (*Romero v. Los Angeles Rams* (2023) 91 Cal.App.5th 562, 567.) In granting Defendants summary judgment, the trial court ruled that the Prado Family failed to raise triable issues of material fact concerning two of these elements: breach and causation. On appeal, the Prado Family challenges this ruling, arguing that they raised triable issues concerning both breach and causation.

We review the trial court's grant of summary judgment de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) In so doing, we "consider all of the evidence set forth in the [motion and supporting] papers, except the evidence to which objections have been made and sustained by the court . . . ." (Code Civ. Proc., § 437c, subd. (c).) In addition, we view this evidence "in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly construing defendant['s] own showing, and resolving evidentiary doubts or ambiguities in plaintiff's favor. [Citations.]" (*Saelzer v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

For the reasons explained below, we conclude that that the trial court erred in granting summary judgment because the Prado Family raised triable issues concerning both breach and causation.

### A. Breach

The Prado Family asserts that there are four triable issues of material fact concerning whether Castillo breached his duty of care. We need consider only one of these issues: whether Castillo breached landfill custom and, by extension, the duty of care by reversing his truck into the landfill's dumping area without receiving a signal authorizing him to do so. We conclude that there is a triable issue concerning this point.

### 1. *Landfill Custom*

Before considering whether there is sufficient evidence that Castillo reversed his truck without a signal, we address the antecedent question whether the landfill custom imposed on Castillo a duty to await a signal. Defendants argue that the Prado Family waived this issue and, in any event, failed to present sufficient evidence of the custom. We reject both arguments.

#### a. Waiver

Defendants assert that the Prado Family waived the argument that Castillo had a duty to await a signal by agreeing to the standard of care proposed by Defendant and failing to propose an alternative standard. In fact, the Prado Family properly raised the issue whether the landfill custom required Castillo to wait for a signal. In both their memorandum in opposition to summary judgment and their response to Defendants' statement of undisputed material facts, the Prado Family asserted that at the landfill "trucks are required to wait for a signal from the spotter letting them know that they can proceed to the dumping area to dump." Although the Prado Family did not use the term, this is a proposed standard of care.

It is true that the Prado Family did not dispute Defendants' description of the custom at the landfill. However, that description is silent as to whether a truck driver must receive a signal before reversing into the dumping area. Defendants' description addresses what a truck does in entering the landfill ("enter along a main driveway" and "get instruction from the spotter"), how it is supposed to park ("in a designated staging area . . . with the rear of the trailer facing directly towards the active face"), and what the preceding truck must do before a truck may reverse into the dumping area ("dr[i]ve off using the main driveway to exist the landfill").[2] However, the description does not

---

[2] Defendants' description states in full: "[W]hen a tractor-trailer arrived, it would enter along a main driveway, get instructions from the spotter, and turn to park in a designated staging area some distance opposite from the active face, with the rear of the

6

address when a parked truck may begin reversing; instead, it avoids the issue by stating that trucks are positioned so that they "can reverse towards the active face and dump its trailer load." Because Defendants' description of the landfill's custom did not address when a truck may begin reversing, the Prado Family did not make any concession concerning that issue by not contesting the description.

b. Custom

The Prado Family presented evidence that the custom at the landfill required trucks to wait for a signal from the spotter before reversing into the dumping area.

In particular, the Prado Family presented deposition testimony from Ruben Scuffy, the former site manager at the John Smith Road landfill. As site manager, Scuffy had immediate oversight of the landfill's operations, including safety. He testified that the site operator "tells the spotter once it is clear for the spotter to let the truck know that he or she can move their truck to the dump" and that "the spotter has to let the truck know that they can start moving."

Scuffy's testimony that at the landfill trucks must wait for a signal before reversing in the dumping area was corroborated by other testimony. For example, Noe Aguilar, the driver in the dumping area ahead of Castillo before the accident, testified that at the landfill the spotter "has to give you a signal to let you know it's your turn to go dump." David Jappert, the district general manager with responsibility for supervising the landfill's operations, similarly testified that "the spotter will give [the trucks] direction of where to go and when to go" and that trucks reverse without a signal only "if someone doesn't follow instructions." Finally, Hugo Solorio, Canela's direct supervisor at the time of the accident, testified that the spotter tells the trucks "when to go to back up."

---

trailer facing directly towards the active face, so that the tractor can reverse towards the active face and dump its trailer load after the preceding tractor-trailer completed that maneuver and drove off using the main driveway to exit the landfill[.]"

7

Defendants dispute this evidence. They contend that Solorio testified that Canela "was not to be involved in telling tractor-trailer operators when to reverse towards the active landfill face" but instead "was to stay in the 'spotter box.' " In support of this contention, Defendants cite to a page in their statement of undisputed material facts. In fact, there is no such statement on the page. There is a statement that landfill employees were supposed to remain "within the 'safe zone' or in a 'spotter's box,' " but nothing about whether trucks need to await a signal before reversing. Nor do any portions of Solorio's deposition cited on the page address whether a signal from the spotter is required. In any event, even if Solorio had testified that no signal was required, the testimony of Scully, Aguilar, and Jappert would contradict that testimony, thereby raising an issue of fact for the jury to resolve. We therefore conclude that the Prado Family raised a triable issue concerning whether the landfill custom required Castillo to wait for a signal before reversing his truck.

This evidence of custom raises a triable issue concerning the duty of care. As a general rule, " 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ." ' [Citations.]" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771; see also *id.* at p. 774 [noting that this general duty "indisputably applies to the operation of a motor vehicle"].) As the Supreme Court has recognized, "[t]he standard of care required in a particular circumstance may be based on . . . [citation] the custom and practice in the relevant community." (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 809; see also *id.* at p. 811 [finding sufficient evidence that bank's conduct fell below the relevant standard of care based in part on banking industry custom]; *Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 501-502 [finding sufficient evidence that party failed to use ordinary care based in part on evidence of industry custom].) Accordingly, we conclude that the evidence of landfill custom in the record raised a triable issue whether Castillo had a duty to wait for a signal before reversing his truck into the dumping area.

8

## 2. *Violation of Custom*

Although the trial court recognized that the Prado Family presented evidence that landfill custom required Castillo to wait for a signal authorizing him to reverse his truck, it nonetheless ruled that there was no triable issue concerning breach because the Prado Family failed to submit evidence that Castillo did not receive a signal.[3] At oral argument, however, Defendants conceded that Castillo did not receive a signal. Even more important, in the trial court, they did not contend that there was such a signal. As the party moving for summary judgment bears the initial burden of production, it is unclear that the burden on the issue ever shifted to the Family. (See *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534.) We need not resolve this issue because the Prado Family has not raised it on appeal and because the evidence in the record raises a triable issue whether Castillo reversed into the dumping area without a signal.

A jury could reasonably infer from the facts surrounding Canela's death that Castillo reversed his truck without receiving a signal authorizing him to do so. The landfill used only one spotter, which on the day of the accident was Canela. Canela was found behind Castillo's truck, beneath the trailer's rear axle, and the accident occurred immediately after Castillo began reversing his truck. As a consequence, a jury could reasonably infer that Canela was behind the truck at the time. (See Code Civ. Proc., § 473c, subd. (c) ["In determining if the papers show that there is no triable issue as to any material fact, the court shall consider . . . all inference reasonably deducible from the evidence . . . ."].) The landfill, however, had "a written policy . . . that 'spotters may not direct traffic from behind moving vehicles.' " Consequently, a jury also could reasonably

---

[3] The trial court's order states that "Plaintiffs do not submit evidence demonstrating that Mr. Castillo, on the day of the incident, failed to take instructions from the spotter when operating his tractor-trailer at the landfill." In noting that there was no evidence Castillo "failed to take instructions," the court may have been observing that there was no evidence Castillo received instructions but refused to follow, or "take," them. However, as the Prado Family argued only that Castillo did not receive a signal to proceed, we interpret the order to refer to the absence of such a signal.

infer that Canela would not have given Castillo a signal authorizing him to reverse while behind Castillo's truck. Indeed, no reasonable person would have authorized Castillo to reverse while in a blind spot immediately behind the truck and thereby endanger himself or herself.

The inference that Castillo reversed his truck without a signal is supported by the statements that Castillo made to law enforcement officers. After Canela's death, a highway patrol officer came to the landfill and interviewed Castillo. Castillo told the officer that the type of truck he was driving on the day of the incident, a tipping trailer, did not need to wait for a signal from the spotter: According to the officer's notes, Castillo's "understanding of the protocol is that if a driver has a walking trailer, they have to wait for a signal from [Canela] to back up. *If a driver has a tipping trailer, they are clear to back up when the tipper is clear*." (Italics added.) Both Canela's supervisor Solorio and the district general manager Jappert testified that in fact tipping trailers were required to await a signal. Consequently, a jury could reasonably infer that Castillo did not wait for a signal because he mistakenly believed that he did not need one.

Finally, the inference that Castillo did not wait for a signal before reversing is supported by the testimony of Aguilar, the truck driver in the dumping area ahead of Castillo at the time of the accident. Aguilar testified that he was still on his "tipper" and had not driven away when he heard honking and learned of the accident. As Defendants acknowledge, the custom at the landfill was that a truck would not dump its trailer until "after the preceding tractor-trailer . . . drove off using the main driveway to exit the landfill[.]" Because Aguilar had not yet driven away when the accident occurred, a jury could reasonably infer that Castillo had not received a signal authorizing him to reverse into the dumping area.

Thus, the evidence in the record raised a triable issue whether Castillo received a signal before reversing his truck into the dumping area. And because there was a triable issue whether the landfill custom and, by extension, the duty of care required Castillo to

10

wait for a signal before reversing, there also was a triable issue whether Castillo breached the duty of care. Because we conclude that there is a material issue whether Castillo breached his duty of care by violating landfill custom, we do not reach the question, addressed by the concurrence, whether other evidence also raises a material issue concerning breach.

## B. Causation

In addition to holding that the Prado Family failed to raise a triable issue concerning breach, the trial court ruled that the Family failed to raise a triable issue whether Castillo's breach was a cause in fact of Canela's death. We conclude that this ruling is erroneous.

"Whether a defendant's conduct actually caused an injury is question of fact [citation] that is ordinarily for the jury." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252.) "In cases where concurrent independent causes contribute to an injury, we apply the 'substantial factor' test" (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352, fn. 12 (*State Dept. of State Hospitals*)), under which "a cause in fact is something that is a substantial factor in bringing about the injury." (*Rutherford v. Owens-Illinois, Inc*. (1997) 16 Cal.4th 953 958.) This standard " 'is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.' " (*Bockrath v. Aldrich Chemical Co*. (1999) 21 Cal.4th 71, 79.) Thus, even "a very minor force that does cause harm is a substantial factor." (*Ibid*.)

The evidence in the record satisfies this standard. If Castillo had waited for a signal, he would not have reversed and hit Canela. Instead, Castillo would have waited for a signal from Canela, which it may be reasonably inferred Canela would not have given until he moved safely away from Castillo's truck. As a consequence, had Castillo waited for a signal from Canela, he would not have hit Canela, and Canela would not have been killed. Thus, a jury could reasonably infer that Castillo's failure to await a

11

signal authorizing him to reverse was a substantial factor in bringing about the accident that killed Canela.

The trial court held that there was no triable issue concerning causation primarily because the Prado Family did not dispute two paragraphs in Defendants' statement of undisputed material facts. Those paragraphs, however, merely stated that it was undisputed that Defendants' expert reached certain conclusions; they did not state the conclusions themselves were undisputed. The first paragraph stated that "Defendant's unrebutted liability expert on industrial safety, Paul Andersen, . . . concluded that . . . Mr. Prado's passing was the result of his 'independent employee action.' "[4] The second paragraph similarly stated that "Mr. Anderson also concluded, based on a root cause analysis of the incident, that Mr. Navarro Castillo did not cause the incident, with Mr. Prado being the sole contributing factor." Thus, by not disputing the material facts in issue, the Prado Family was merely admitting that Defendant's expert Anderson reached specified conclusions during discovery, not admitting the conclusions themselves.

Indeed, as this district recognized long ago, the two paragraphs in question were improper. In *Reeves v. Safeway Stores, Inc*. (2004) 121 Cal.App.4th 95 (*Reeves*), the defendant asserted "various 'undisputed facts' in terms not of relevant *events* but what a witness has *said* about events . . . ." (*Id*. at p 105.) Parties moving for summary judgment are required to set forth "*plainly and concisely* all *material* facts which the moving party contends are undisputed" (Code Civ. Proc., § 437c, subd. (b)(1), italics added), but what a witness "might have said *in deposition* is not, as such, a 'material fact.' " (*Reeves*, *supra*, at p. 106.) Consequently, *Reeves* concluded, it is improper to

---

[4] The paragraph stated in full: "During expert discovery, Defendants' unrebutted liability expert on industrial site safety, Paul Andersen, who is also a former trucker, concluded that Waste Connections' traffic control plan and its other attempts to create a minimum safe distance between workers and vehicles met industry standards, such that Mr. [Canela]'s passing was the result of his 'independent employee action' in violating the traffic control plan and Waste Connections' other safety rules, regulations and training."

"stat[e] the supposed 'fact' in an attributive form." (*Ibid*.) Similarly, here, it was improper for Defendants to state that it was undisputed that their expert reached conclusions rather than state the expert's conclusions were undisputed. We therefore refuse to conclude that the Prado Family admitted the truth of the expert's conclusions by not disputing that the expert reached those conclusions. We likewise refuse to conclude that the Family was required to direct the trial court to evidence contradicting those conclusions.[5]

Defendants also argue that Canela would not have been killed "but for" his own failure to follow the landfill's safety standards and in particular by not staying in the spotter's box or a safe zone. While that may be true, it does not help Defendants for the simple reason that injuries may have multiple causes. (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187 ["a defendant cannot avoid responsibility because some other person, condition or event was also a substantial factor in causing plaintiff's harm"].) Indeed, it is precisely because injuries may have multiple causes that California courts use the "but-for" causation test only where an event has a single sufficient cause. (*State Dept. of State Hospitals*, *supra*, 61 Cal.4th at p. 352, fn. 12.) "In cases where concurrent independent causes contribute to an injury, [courts] apply the 'substantial factor' test . . . ." (*Ibid*.) This does not mean that Defendants may be held liable for all the damage resulting from Canela's death even though Canela's conduct also may have contributed to his own death. Instead, where a plaintiff's conduct is a substantial factor in causing the plaintiff's injury, courts use comparative fault principles to apportion responsibility for the injury. (See, e.g., *Li v. Yellow Cab Company of California* (1975)

---

[5] Our ruling on this point is reinforced by Defendants' apparent mischaracterization of their expert's testimony. In their separate statement of undisputed material facts, Defendants asserted that Andersen concluded Canela was "the sole contributing factor to the incident." In fact, in the excerpts that Defendants submitted, Andersen did not testify about other potential contributing factors and did not even use the word "sole."

13 Cal.3d 804, 829 ["[I]n all actions for negligence resulting in injury to person or property, the contributory negligence shall not bar recovery, but the damages awarded shall be diminished in proportion to the amount of negligence attributable to the person recovering."]; see also *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 285 [applying comparative fault principles to wrongful death action].)

Although defendant Lopez sought summary judgment on alternative grounds, and both defendants sought summary adjudication, Defendants have not raised these issues on appeal, and we therefore leave them for the trial court to consider in the first instance.

### III. DISPOSITION

The judgment is reversed, and this matter is remanded to the trial court with directions to vacate the order granting summary judgment. The Prado Family is entitled to reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
BROMBERG, J.

I CONCUR:


_____
DANNER, J.

*Prado et al. v. A. Navarro Transport Truck et al.*
H050309

BAMATTRE-MANOUKIAN, Acting P.J., Concurring.

This case concerns a tragic incident involving a truck driver who backed over a longtime employee of a landfill facility, resulting in his death. Defendants prevailed in the ensuing negligence lawsuit by the decedent's family when the court granted a motion for summary judgment.[1] I concur with the majority that the granting of summary judgment in favor of the driver, Mauricio Navarro Castillo, doing business as (dba) A. Navarro Transport (Castillo), was improper and that the matter should be reversed and remanded to the trial court for further proceedings. I write separately to express my view that, based upon the record before this court, defendant Castillo failed to meet his initial burden of production on summary judgment of demonstrating the absence of a triable issue of material fact that Castillo breached the duty of care owed to decedent, one of the elements of plaintiffs' negligence claims. I would thus conclude that the burden never shifted to plaintiffs to rebut defendant Castillo's showing regarding breach of duty.

## I.      Introduction

On March 16, 2017, the decedent, Alfredo Prado Canela, was working as a traffic management coordinator (spotter) at the John Smith Road landfill in Hollister, owned by Waste Connections, Inc. His job as spotter was to control the flow of trucks in the main landfill area so that the drivers could ultimately proceed to the dumping area, wait their turn, and then proceed to back up their vehicles to dump their loads. Driver Castillo arrived at the facility in his truck (tractor-trailer) that morning at around 7:15 to dump a load of scrap metal. He had been using the John Smith Road landfill facility for

---

[1] As to the two elements of breach of duty and causation, the trial court concluded that defendants had met their initial burden as moving parties. The court concluded further that, as to breach of duty, plaintiffs had failed to meet their burden of raising a triable issue of material fact, and it found "the element of breach of duty decided as a matter of law in favor of [Navarro]." The trial court further held that plaintiffs had failed to "raise a triable issue of material fact on the issue of causation," and thus "decided [causation] as a matter of law in favor of Defendants." The question of breach of duty by defendant Castillo is the only matter I address here.

approximately two years.  Castillo parked his truck in the designated staging area with its back facing the dumping area to wait for a truck driver arriving before him to dump his load.

While waiting his turn, Castillo exited his truck and spoke with another driver at the rear of their trailers.[2]  According to Castillo, he never spoke with decedent Canela that day.  Castillo told an investigator that he had seen the decedent on the right side of the tipper (metal container in area where refuse is dumped); when he was deposed years later, Castillo testified that he had seen the decedent in a different part of the facility and much further away—about 300 feet from him.  Three witnesses, however, stated they had observed the decedent and Castillo conversing behind the left side of the latter's truck.  After returning to his truck and after five minutes or less had passed, Castillo, after looking in his sideview mirrors, began backing up.  His truck was apparently equipped with an audible backup warning device, but it was not working at the time of the incident.  Castillo almost immediately heard honking and yelling, stopped, and exited his truck.  The decedent was found in front of the left rear trailer tires of Castillo's truck.  Decedent's brother, who also worked at the landfill, was on a bulldozer at the time; he did not witness the incident but arrived at the site shortly after it occurred and called for emergency responders.

On January 2, 2019, plaintiffs and appellants—the decedent's widow (Alicia Prado) and his children (Alfredo, Jr., Alex, and Melissa Garcia)—filed suit against defendants and respondents Castillo, and Mark Lopez, dba Premier Transportation

---

[2] As discussed, infra, Castillo denied during an interview on the day of the incident and in his deposition taken over three years later that he ever exited his truck while he was waiting to dump his load.  But approximately one month after the incident, he told an investigator that he *had* gotten out of his truck and had spoken to another driver.  Three other drivers stated that they had witnessed Castillo exiting his truck while he was waiting in line.

(Lopez),[3] for wrongful death, asserting claims for motor vehicle negligence and general negligence.

Defendants moved for summary judgment or, in the alternative, for summary adjudication, on February 17, 2022. They urged that neither negligence cause of action had merit because plaintiffs could not rebut the undisputed evidence that (1) Castillo did not breach the established duty of care, "and that if anything, Mr. Canela caused his own death by violating Waste Connections safety rules and regulations as well as his spotter training at the landfill concerning vehicle traffic"; and (2) Lopez did not cause or contribute to the incident. Defendants asserted further that: "[t]he evidence, and all reasonable inferences therefrom, are conclusive and not subject to dispute," and "[t]here is no triable issue of material fact in support of the complaint against Defendants as to its two causes of action for negligence."

The trial court granted defendants' summary judgment motion on June 29, 2022. It concluded that defendants had met their initial burden of showing that Castillo's conduct "did not fall below the standard of care." The trial court reasoned that the burden then shifted to plaintiffs to demonstrate a triable issue of material fact. They argued that the custom and practice of the facility was that drivers such as Castillo could not begin moving their trucks until being instructed by the spotter to proceed, and that Castillo did not comply with this requirement, thereby breaching the standard of care. The court concluded that plaintiffs had not raised a triable issue because they had not submitted evidence that "Castillo, on the day of the incident, failed to take instructions from the spotter when operating his tractor-trailer at the landfill." Therefore, the trial court concluded that plaintiffs had failed to meet their burden of raising a triable issue of material fact, and it found "the element of breach of duty decided as a matter of law in favor of [Navarro]." The trial court also found that defendants had met their initial

---

[3] Premier Transportation (Lopez) was the company that hired Castillo to pick up and dump the scrap metal on the day of the incident.

3

burden of production in showing the absence of a triable issue of fact that defendants caused the incident. It held that plaintiffs had not rebutted this showing, and it therefore ruled in favor of defendants by finding that there was no triable issue of material fact supporting the element of causation.

I agree with my colleagues that the judgment entered in this case in favor of Castillo must be reversed because there were triable issues of fact supporting the elements of breach of duty by Castillo and causation required for plaintiffs' negligence claims. But from my reading of the record, I would conclude that defendant Castillo did not satisfy his burden in the first instance of showing that his conduct did not fall below the standard of due care in the operation of his truck that led to Canela's death. This conclusion is based upon both facts noted by my colleagues, as well as facts not discussed in the majority opinion but which were included in defendants' moving papers. Therefore, in my view, defendant Castillo did not meet his "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); see also Code Civ. Proc., §437c, subd. (p)(2).)[4]

## II.     Negligence

In this case, as in any negligence case, " '[t]o prevail on [an] action in negligence, plaintiff[s] must show that defendants owed [them] a legal duty, that they breached the duty, and that the breach was a proximate or legal cause of [their] injuries.' [Citations.]" (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 (*Wiener*).) Stated most broadly, the standard to determine whether a breach of duty exists in this case is whether defendant Castillo comported himself in the manner that "a reasonable man [would act] under the circumstances." (Rest.2d Torts, § 283; see *Tucker v. Lombardo* (1956) 47 Cal.2d 457, 463 ["standard of care required of defendant was that of

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

4

ordinary care under the circumstances"].)  "[E]very [negligence] case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct.  [Citation.]"  (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46.)  In a case involving a truck driver sued for backing over a child, an appellate court applied these general concepts of legal duty and breach as follows:  "Negligence is not an absolute term, but a relative one; and in deciding whether a defendant has been negligent in a given case, the conduct in question must be considered in the light of all the surrounding circumstances, as shown by the evidence, which existed prior to and at the time the alleged negligent act was committed. . . .  [T]he determinative question the jury here was called upon to decide, in considering the issue of the driver's negligence, was whether in the light of all the existing circumstances and conditions shown by the evidence he exercised the care of a reasonably prudent person in backing up his truck."  (*Conroy v. Perez* (1944) 64 Cal.App.2d 217, 223 (*Conroy*).)

The analysis of breach of duty in a negligence case begins with these general principles.  It is of course true that the custom and practice involved in the particular circumstances of the case may be relevant in determining the specifics of the duty of care.  But it is not the start and end point in the analysis of duty and breach of duty.  "The standard of care required in a particular circumstance may be based on . . . the custom and practice in the relevant community.  [Citations.]  While the custom in the community *does not necessarily establish how a reasonable person must act*, it is evidence to be considered in determining the proper standard of care.  [Citations.]"  (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 809, italics added.)  Thus, "[e]vidence of the custom or general practice in the same trade or occupation is relevant but not conclusive on the question whether the actor utilized due care.  [Citation.]  Conformity with the general practice or custom will not excuse conduct which is not consistent with due care.

5

[Citations.]" (*Holt v. Department of Food & Agriculture* (1985) 171 Cal.App.3d 427, 435.)

### III.    Summary Judgment

As the parties moving for summary judgment, defendants here had two burdens. First, they bore, "from commencement to conclusion, . . . the burden of persuasion that there [was] no triable issue of material fact and that [they were] entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted; see also § 437c, subd. (c) ["[t]he motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"].)  Second, defendants bore "an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, *supra*, at p. 850.)  In meeting this burden, defendants were required to initially "show[] that the plaintiff cannot establish one or more elements of the action.  [Citation.]" (*Wiener*, *supra*, 32 Cal.4th at p. 1142; see also § 437c, subd. (p)(2) [defendant meets initial burden of demonstrating that cause of action has no merit by "show[ing] that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action"].)  Only after defendants have made this initial showing does the burden shift to plaintiffs to show the existence of a triable issue of fact supporting the negligence claim.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767-768 (*Saelzler*).)

### IV.    Appellate Review of Summary Judgment

An appellate court reviews a trial court's ruling on a summary judgment motion de novo.  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.)  "In practical effect, [the court of appeal] assume[s] the role of a trial court and appl[ies] the same rules and standards which govern a trial court's determination of a motion for summary judgment.  [Citation.]" (*Lenane v. Continental Maritime of San Diego, Inc.* (1998) 61 Cal.App.4th 1073, 1079.)  In conducting its de novo review, the appellate court

6

"take[s] the facts from the record before the trial court when it ruled on [the summary judgment] motion. [Citation.] '[The appellate court] . . . consider[s] all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' [Citation.]" (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034-1035 (*State Dept. of Health Services*).) Thus, in the instance of the granting of a defense motion for summary judgment, the reviewing court "determine[s] whether defendants . . . have shown, through the evidence adduced in this case . . . that plaintiff[s have] not established, and cannot reasonably expect to establish, a prima facie case . . . , a showing that would forecast the inevitability of a nonsuit in defendants' favor. If so, then under such circumstances the trial court was well justified in awarding summary judgment to avoid a useless trial. [Citation.]" (*Saelzler*, *supra*, 25 Cal.4th at p. 768.)

I find there is significant additional evidence, not discussed in the majority opinion, that demonstrates triable issues of fact supporting the breach of duty element of plaintiffs' negligence claims against defendant Castillo. This evidence (discussed *post*) is certainly included among "the facts from the record before the trial court when it ruled on [the summary judgment] motion. [Citation.]" (*State Dept. of Health Services*, *supra*, 31 Cal.4th at pp. 1034-1035.) Moreover, because this additional evidence was contained in *defendants' moving papers* (i.e., declaration of counsel attaching documents and deposition transcript excerpts), I would conclude that the trial court erred in concluding that defendant Castillo "met [his] initial burden in demonstrating the conduct of . . . Castillo[] did not fall below the standard of care."

This additional evidence which is significant to the disposition of this appeal, although contained in defendants' moving papers, was not specifically identified in their separate statement of undisputed material facts in support of their motion (separate statement). Defendants were required to set forth the undisputed material facts in their separate statement. (See § 437c, subd. (b)(1).) Generally, "*all* material facts must be set

7

forth in the separate statement. 'This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*. Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth *in the separate statement*.' [Citations.]" (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337, superseded by statute on other grounds, original italics.) But it would be anomalous to apply the " 'Golden Rule' " here to preclude our de novo consideration of these additional facts contained in the record. (*Ibid*.) The principle that facts omitted from the moving party's separate statement may not be considered is intended to preclude *that party* from relying on them. That is not the case here, where the defendants would benefit from application of the principle by preventing this court from considering evidence *that defendants, themselves, proffered in their motion*. I would thus conclude that, in our de novo review, we may consider facts in the record that were presented by the successful moving parties, defendants, particularly where, as here, that consideration would support the finding that summary judgment was erroneously granted.[5]

---

[5] I note that appellate courts have held that the trial court has discretion to consider material facts omitted from the moving party's separate statement. (See, e.g., *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315-316.) This discretion extends to the appellate court's consideration of omitted material facts: "[W]hen the trial court neither exercises nor declines to exercise that discretion, as is the case here, the appellate court has the same discretion as the trial court to consider evidence not cited in a party's separate statement. [Citation.]" (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 183; see also *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 438 ["[t]he separate statement is not designed to pervert the truth, but merely to expedite and clarify the germane facts"].) I would conclude that there is a basis for exercising our discretion to consider the additional material facts in defendants' motion. (See *Ghazarian*, *supra*, at p. 183.) They were clearly matters presented to the trial court and known to both parties. And the facts are significant in that they present a broader basis for concluding that there are triable issues of fact in support of the negligence claims.

## V. Failure to Meet Initial Summary Judgment Burden (Breach of Duty)

In arriving at its conclusion that there was no triable issue of fact that Castillo breached the duty of care, the trial court relied on what defendants argued was the established custom for drivers of tractor-trailers who used the landfill facility to dump off the contents of their trailers. The court found that there was no triable issue that Castillo breached his duty of care because: (1) defendants met their initial burden of showing that Castillo's conduct did not fall below the standard of care; and (2) although plaintiffs argued that drivers such as Castillo could not proceed to back up their trucks until they were instructed by the spotter and that Castillo did not comply with this practice, plaintiffs presented no evidence that Castillo had "failed to take instructions from the spotter." As discussed below, the trial court's finding that there was no triable issue of fact that Castillo had breached the duty of care did not take into consideration additional facts—many beyond the issue of custom and practice of truck operation at the landfill— that were contained in defendants' moving papers.

### A. Evidence Re Breach of Duty

#### 1. Waiting Period

Disputed material facts were presented in the motion concerning what transpired after Castillo parked his tractor-trailer in the staging area (rear facing the dumping site) and waited to proceed to the tipper to dump the contents of his trailer. The existence of these disputed material facts—in particular, whether the decedent was physically present speaking with Castillo immediately behind his truck shortly before the incident—militate against a finding that defendants satisfied their initial burden of negating the element of breach of duty.

Castillo's own account given during the investigation was self-contradictory. When he was initially interviewed approximately 90 minutes after the incident, Castillo told the California Highway Patrol (CHP) investigator, Officer Amy Tritenbach, that he

9

had not stepped outside of his truck while he was waiting to use the tipper.[6]  During a second interview with the CHP on April 20, 2017, however, Castillo admitted that he had exited his truck and had stood behind it speaking with another driver, Juan Munoz, for about a minute.  But Castillo, in his deposition taken over three years later, testified that from the time he arrived at the landfill to the incident, he never exited his truck and never spoke with any drivers.  In both interviews and in his deposition, Castillo denied having spoken to decedent at all on the day of the incident.

Three witnesses contradicted Castillo's account.  Driver Munoz told Officer Tritenbach that after pulling up next to Castillo's truck, Munoz walked to the back and began talking with Castillo.  While they were talking, the decedent approached and "talked with them for a minute."  Driver Noe Aguilar—the truck driver using the tipper ahead of Castillo—told the CHP that he observed Castillo and the decedent standing behind Castillo's truck on the lefthand (driver's) side; they appeared to be talking. Aguilar later confirmed this in his deposition, testifying that he observed Castillo and the decedent speaking for "about five or ten minutes" "in front of" Castillo's truck.  Driver Juan Macias told the CHP that while he was waiting in his truck to go to the main dump

_____

[6] The 16-page CHP investigative report of the incident was an exhibit to the declaration of defendants' attorney in support of the motion for summary judgment, and it was cited in defendants' motion.  While issues may ultimately be raised at trial by the parties concerning the admissibility of some matters contained in the report, this court need not concern itself with those prospective issues in reviewing the order granting summary judgment.  " '[O]n appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.]" (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534; see also § 437c, subd. c ["[i]n determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court"].) Defendants, of course, did not object to the evidence *they themselves submitted*.  And in reviewing the record de novo, it is not this court's obligation to perform sua sponte a review of the evidence for admissibility where the parties themselves have not asserted objections.

area, he saw Castillo and Munoz standing outside, less than five feet from the left rear of Castillo's truck, talking with the decedent.

## 2. The Incident

There were also disputed material facts presented in defendants' moving papers concerning how the incident transpired. During the second interview with CHP Officer Tritenbach, Castillo said that after he spoke outside of his truck with Munoz, and after seeing that Aguilar was almost finished at the tipper, Castillo returned to his truck cab. When Aguilar pulled away from the tipper, Castillo prepared to back up.[7] After checking both sideview mirrors, Castillo began backing up. Castillo "heard lots of horn honking and yelling." Castillo stopped, after having backed up approximately five feet, got out of his truck, and observed the decedent under the rear of the truck.

The evidence was conflicting as to the length of time that passed between Castillo returning to his truck and when he began backing up. Castillo told Officer Tritenbach that it was approximately five minutes. Aguilar, the driver who was dumping his load at the tipper immediately before the incident, observed Castillo outside his truck waiting to back up; when Aguilar was almost finished, he saw Castillo " 'hurr[y]' to his truck because he was next in line to use the tipper." Aguilar then pulled away from the tipper and as he was driving past the two trucks in line to dump their loads (one being Castillo's), he heard a horn honk from a truck on the driveway and Aguilar immediately stopped. A reasonable inference is that Aguilar estimated that less than one minute passed between Castillo returning to his truck and beginning to back up. Driver Munoz, who was parked beside Castillo's truck, told Officer Tritenbach that after Castillo and he

---

[7] During the first interview, Castillo told the CHP investigator that after parking, he waited in his cab about 15 minutes until Aguilar began to pull away from the tipper before Castillo prepared to back up. Castillo testified in his June 2020 deposition— where he denied having ever left his cab—that he could not remember how much time elapsed between when he began waiting until he started backing up to the tipper to unload his truck.

11

spoke behind their trucks, he walked back to his truck, and Castillo walked back to the cab of his truck. Munoz was in his truck for about 45 seconds "when he heard lots of honking" and then saw people running to the back of the trucks. It can be reasonably inferred that Munoz's time estimate between Castillo returning to his cab and his backing up was one minute or less.

The evidence concerning the timing of, and location(s) where, Castillo saw decedent Canela on the day of the incident was also in conflict. Castillo's accounts in his interviews with Officer Tritenbach and in his later deposition testimony were themselves conflicting. During the first interview shortly after the incident on March 16, 2017, Castillo stated that he first saw the decedent standing near the tipper, and the last time he saw him before backing over him, decedent was approximately 10 feet behind the right of the rear of Castillo's trailer.[8] He also told Officer Tritenbach that he had observed the decedent from Castillo's right sideview mirror walking from the tipper towards his truck. During the second interview on April 20, 2017, Castillo said that while he was talking to Munoz at the rear of their trailers, he observed decedent Canela to the right side of the tipper. Castillo told Officer Tritenbach on April 20 that he did not recall where the decedent was located when Castillo was preparing to back up (after having returned to his truck from speaking with Munoz). He said that his "only concern was with the tipper and when it was clear for him to back up." Castillo testified in his June 2020 deposition that he never saw decedent Canela in the tipping area; he stated that while he was waiting in his truck, he saw the decedent "directing the walking trucks" about 300 feet away from him. Obviously, as discussed above, Aguilar, Munoz, and Macias offered accounts that contradicted Castillo's, since the three drivers all stated that they saw the decedent speaking with Castillo on the left side behind his truck shortly before Castillo returned to the cab and backed the truck up.

---

[8] The report of the interview with Castillo does not disclose the length of time between his last sighting of the decedent behind his truck and when the incident occurred.

12

### 3. *Precautions Taken Before Backup*

Although Castillo told Officer Tritenbach in both interviews that he looked in both sideview mirrors before he began backing up, these statements were not corroborated by other witnesses. In any event, the record does not show that Castillo employed any other precautionary measures before proceeding to back up his truck.

For instance, there is no evidence in the record that Castillo's truck produced an audible warning when Castillo placed it in reverse and backed over decedent Canela. The truck was apparently equipped with an audible backup warning device, but it was not working at the time of the incident. Defendants' *own safety expert*, Paul Anderson, opined during his deposition (1) that a back-up alarm system "is definitely a safety feature for pedestrian traffic in, near, or around the vehicle," (2) the system was required for the type of truck operated by Castillo, and (3) it "was not operational at the time" of the incident. If shown at trial that the truck's back-up alarm system was not operational when the incident occurred, this fact might play a significant role in the trier of fact's determination of whether the precautions taken by Castillo were those a reasonable person would have employed under the circumstances.

Further, no witness (including Castillo, himself) indicated that Castillo, as a safety measure, exited his truck immediately before backing up to check for people behind him. Castillo in his first interview told Officer Tritenbach that he observed the decedent walk from the tipper to approximately 10 feet behind the right rear of his truck from his right-side mirror and that he did not get out of his truck. And were a trier of fact to believe the accounts of the three drivers, this might significantly impact whether the trier of fact would find Castillo's failure to get out of his truck to check behind him was reasonable under the circumstances.

No witness indicated that Castillo honked his horn as a warning before backing up. And the record does not show that Castillo told the CHP investigator or testified that he had done so.

Moreover, there is no evidence that Castillo waited for an all-clear signal from the spotter, decedent Canela, before placing his truck in reverse and proceeding to back up. From Castillo's statements to the CHP investigator and his deposition testimony describing his actions before backing up—in which he did *not* indicate that he had proceeded only after obtaining the spotter's approval—it can be reasonably inferred that Castillo did not wait for an audible or gesturing signal from the decedent before he backed his truck up.[9] Rather, during his first interview with Officer Tritenbach, Castillo stated that he understood that it was the facility's protocol that if a walking trailer were involved, the driver needed a signal from the spotter before backing up, but a driver of a truck with a tipping trailer (Castillo's situation) did not need to wait for the spotter's signal. Other witnesses, however, disputed Castillo's understanding of the facility's protocol, stating that the practice was for drivers with both walking trailers and tipping trailers to wait for the spotter's signal before backing up. On this point, David Jappert, District General Manager for Waste Connections, testified as follows in his deposition: "Q[.] If the truck driver moves without having visual or verbal confirmation from the spotter, that's the driver not following directions? [¶] A[.] Correct."

Moreover, even defendants' expert, Paul Anderson, gave opinions that could support a trier of fact's conclusion that Castillo breached his duty of due care by not taking sufficient safety precautions before backing up his truck. Anderson acknowledged that tractor-trailers such as Castillo's—which had a combined weight in excess of 26,000 pounds—were "so large" that a driver might not see a spotter behind him unless "he was in [his] visual range." Anderson explained that here, decedent Canela "[left] the protected area and [went] into the unsafe area, the blind spot of a vehicle that was backing." The defense expert testified further that "the driver has to take responsibility to safely move the vehicle." And Anderson explained that it is an "implied task" of the

[9] During oral argument, counsel for defendants acknowledged that before backing up his truck, Castillo had not received an all-clear signal from the spotter, Canela.

14

driver, if he knows a spotter is in the area, to see if the spotter is around before backing up.

**B.      Conclusion:  Breach of Duty by Castillo**

A review of the evidence submitted by defendants in their moving papers demonstrates that there were disputed issues of material fact concerning whether defendant Castillo breached the duty of care in the operation of his tractor-trailer.  There was a factual dispute concerning where decedent Canela was physically located in the last moments before Castillo placed his truck in reverse and drove it slowly toward the tipper.  Three witnesses observed the decedent and Castillo talking behind the left side of his truck shortly before Castillo returned to the cab to prepare to back up.  Although Castillo consistently stated that he never spoke with decedent Canela on the day of the incident, he gave conflicting accounts regarding where he last saw the decedent:  10 feet behind the right of the rear of Castillo's trailer (first interview); on the right side of the tipper (when Castillo was behind his truck speaking to Munoz), but Castillo did not recall where the decedent was located while he was preparing to back up (second interview); and approximately 300 feet away.

Also of significance was the factual dispute as to the length of time that elapsed between Castillo's returning to his truck cab after standing behind it and his placing the truck in reverse and backing it up.[10]  During the second interview, Castillo told Officer Tritenbach that about five minutes had elapsed.  From driver Aguilar's statement and testimony, it can be inferred that less than a minute went by from the time Castillo " 'hurr[ied]' [back] to his truck because he was next in line to use the tipper" to the time he backed up his truck.  And from the statement of driver Munoz, who said he spoke with

---

[10] This discussion assumes that a trier of fact would conclude, based upon the observations of three witnesses and Castillo's statement during the second interview, that Castillo *did* exit the truck while waiting to use the tipper, and that Castillo's statement during the first interview and Castillo's deposition testimony were discounted.

15

Castillo behind their trucks, and then they both walked back to enter their respective trucks, it can be reasonably inferred that Munoz's time estimate was one minute or less.

Moreover, material facts evidencing an apparent lack of precautionary measures taken by Castillo immediately before backing up his truck, beyond checking his sideview mirrors, presented a triable issue of fact as to his breach of duty. This evidence included knowledge imputed to Castillo that the rear of his tractor-trailer had significant blind spots; Castillo's truck having a nonoperational back-up safety device; Castillo's failure to honk the horn; his failure to exit the truck to look for people behind him; and his failure to wait for a go-ahead signal from the spotter, decedent Canela, before backing up. Defense expert Anderson's own testimony included opinions that would support a finding by the trier of fact that the precautions taken by Castillo before backing up his truck were less than those a reasonable person in his circumstances would have employed. (See *Conroy*, *supra*, 64 Cal.App.2d at p. 223.)

As has been explained: "Even though plaintiff bears the burden of proof at trial, a moving defendant bears the initial burden of showing the lack of any triable factual issue. [Citation.] A responding plaintiff has no evidentiary burden unless the moving defendant has first met its initial burden. [Citation.] *Only after the moving defendant meets its initial burden does the burden shift to the plaintiff to demonstrate the existence of a triable issue.* [Citation.]" (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839-840, italics added.) Based upon the foregoing, I would conclude from a review of the totality of the evidence in the record, and specifically the evidence contained in defendants' moving papers, that there were triable issues of material fact regarding whether defendant Castillo breached the duty of care in the operation of his tractor trailer that led to the death of Alfredo Prado Canela. Therefore, defendants did not meet their initial burden of production of showing that there was no breach of duty on the part of Castillo as a matter of law, and because of this failure, the burden never shifted to

16

plaintiffs to present evidence on this issue.  (See *ibid*.; see also *Saelzler*, *supra*, 25 Cal.4th at pp. 767-768.)

BAMATTRE-MANOUKIAN, ACTING P.J.

*Prado et al. v. A. Navarro Transport Truck et al.*
**H050309**