Filed 4/9/26  Crede v. Abrahamson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| TIMOTHY CREDE, JR., as Trustee, etc., | B346197 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STPB11111) |
| v. | |
| CONSTANCE J. ABRAHAMSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruben N. Garcia, Judge.  Reversed.

Decker Law, James D. Decker, Griffin R. Schindler, and Christopher M. Jones for Plaintiff and Appellant.

The Burbank Firm, James G. Morris, and Jasmin Arya for Defendant and Respondent.

\* \* \* \* \* \*

After the deaths of their former spouses, a woman and a man began a romantic relationship and mutually agreed to sell their individual family homes and, with the pooled proceeds, buy a home together. The man died before their plan came to fruition, but he already had—by that point—sold his family home and given the woman a cashier's check for $550,000. The successor trustee of the man's trust sued the woman in probate court for an order as well as for breach of contract and fraud—seeking a refund of the $550,000 paid to the woman, "one half of the appreciation in value" of the new home, double damages, punitive damages, and attorney fees. The probate court granted summary judgment for the woman. Because there are triable issues of fact as to the terms of the couple's agreement, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Wolfgang Buettner (Wolfgang)[1] was married to Nancy Moses (Nancy) when Nancy died in December 2019. At the time of Nancy's death, they had a trust—The Wolfgang Buettner and Nancy Moses 2018 Revocable Trust (Buettner Trust)—that governed the disposition of their assets. Under the Buettner

---

[1] For clarity's sake, we will use first names where multiple parties share the same last name. We mean no disrespect.

2

Trust, Wolfgang (as the surviving spouse) had the power to sell any of the trust's assets, and those assets included the family home in Lomita, California. The Buettner Trust also provided that, upon Wolfgang's death, half of the trust's residue was to be distributed to beneficiaries designated by Wolfgang (including his two children, Luka and Lilith) and the other half was to be distributed to beneficiaries designated by Nancy (including one of her nephews, Timothy Crede, Jr. (Crede)). The Buettner Trust named Crede as the successor trustee upon the death of both Wolfgang and Nancy.

In early 2020, Wolfgang met Constance J. Abrahamson (Constance) on an online dating website. At that time, she was recently widowed and owned a family home in Northridge, California. At some point before or during the summer of 2020, Wolfgang and Constance orally agreed to sell their respective family homes and, with the proceeds, purchase a home together in San Pedro, California, which they would renovate and reside in together. The San Pedro home was purchased in August 2020 with Constance's money, and title was initially transferred to the trust Constance had previously created with her deceased husband. Constance thereafter sold her Northridge home in September 2020, and Wolfgang thereafter sold his Lomita home in October 2020. On November 17, 2020, Wolfgang gave Constance a $550,000 cashier's check from the proceeds of the sale of his Lomita home.

The specific terms of the oral agreement between Wolfgang and Constance are unclear. According to Constance, she and Wolfgang had agreed that each would contribute half of the San Pedro home's purchase price; that, upon the death of one, the survivor would become the "complete[]" "own[er]" of the home and

3

be permitted to reside in the home; and that "[t]he only condition" was that, upon the survivor's death or sale of the home, the survivor would pay the other's heirs the other's $550,000 contribution amount plus interest (of 2 percent per year) starting at the time of the other's death. When Wolfgang gave Constance the $550,000 cashier's check, she gave him a handwritten note, with her signature, that stated: "Receipt of Cashier's Check #517046 Dated 11/17/2020 from California Credit Union from Wolfgang Buettner for 50% of ownership of property [in San Pedro]." The same day, Wolfgang sent a copy of that receipt in an email to his brother in Germany, explaining that he "paid" the check "to [his] partner Con[stance] . . . to take possession of 50% of the newly purchased ho[me]."

Wolfgang died a month later, in late December 2020, from complications related to COVID-19.

In February 2021, Constance created a new trust in her own name, transferred title to the San Pedro home to that trust, and designated Wolfgang's two children as beneficiaries of $275,000 each upon her death (unless Constance outlived them both).

## II. Procedural Background

In November 2022, Crede—acting as successor trustee to the Buettner Trust—filed a petition in probate court against Constance. The petition (1) requested an order requiring Constance to repay the Buettner Trust $550,000 as well as awarding double damages under Probate Code section 859 and attorney fees, and (2) sued Constance for (a) breach of the "written contract" (namely, the November 17, 2020 receipt), for failing to transfer half of the San Pedro home's ownership to Wolfgang, (b) common counts (based on the indebtedness

4

embodied in the receipt), and (c) fraud; for those civil claims, Crede sought damages of $550,000 plus "one half of the appreciation in value" of the San Pedro property as well as punitive damages and attorney fees.

Constance filed an objection to the petition, and then moved for summary judgment. After full briefing and a hearing in September 2024, the probate court granted summary judgment for Constance. Specifically, the court found that Constance had carried her "initial burden" of showing that (1) she was not in breach of the terms of the oral agreement between herself and Wolfgang "to take joint ownership of the property subject to a life estate[2] in favor of the second of them to die" (because she did not owe Wolfgang or his estate any money until her death or the sale of the San Pedro home), and (2) the statute of frauds did not bar enforcement of that oral agreement because Constance had detrimentally relied upon that agreement when selling her home. The court also found that Crede had not carried his responsive burden of raising a triable issue of material fact merely by attacking Constance's declaration, which set forth the terms of the oral agreement, as self-serving and uncorroborated.

Crede moved for a new trial. Following another round of briefing and a hearing in March 2025, the probate court denied the motion. Specifically, the court ruled that the "undisputed fact[s]" showed (1) that, under the terms of the oral agreement "attested to by [Constance]," Constance's failure to transfer 50

---

2     Although Constance at one point inaccurately described the survivor's right to remain in the home as a "life estate," she has consistently maintained that the right granted—whatever it was called—was the right to retain possession of the home. Her mistaken use of legal terminology does not by itself create any conflict regarding that testimony.

5

percent ownership of the San Pedro home to Wolfgang was not a breach because "it was agreed that the survivor . . . was to hold the entirety of the property following the first of them to die, repaying the first to die's heirs from the proceeds upon the sale of the property or the survivor's death," and (2) that there was an "absence of substantial evidence disputing these terms."

Following a judgment dismissing Crede's petition, Crede filed this timely appeal.

## DISCUSSION

Crede argues that the probate court erred in granting summary judgment for Constance on his petition.[3]

Summary judgment is warranted, and the moving party is entitled to judgment as a matter of law, where (1) the movant carries her initial burden of showing the nonexistence of one or more elements of the claims, and (2) the non-movant fails to show "the existence of a triable issue of material fact" as to that element. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853; Code Civ. Proc., § 437c, subds. (a), (c), (o)(1), (p)(2).) While evaluating those shifting burdens, we must liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts concerning that evidence in favor of that party. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874; Code Civ. Proc., § 437c, subd. (c).) We review de novo a grant of summary judgment. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.)

---

[3]  Because Crede's legal arguments attacking the denial of his new trial motion are identical to those attacking the preceding grant of summary judgment, we need only examine the propriety of the grant of summary judgment.

The portions of Crede's petition seeking a probate order rest on the same premise as the portions of his petition alleging breach of contract and fraud[4]—namely, that Constance breached the contract between herself and Wolfgang (and also committed fraud) by failing to grant Wolfgang (and, by extension, the Buettner Trust) a 50 percent ownership interest in the San Pedro home (which is what entitles the Buettner Trust to a refund of the $550,000 plus appreciation in the value of the San Pedro home).  To prevail on the claims asserted in the petition, Crede is required to show that Wolfgang (and, by extension, the Buettner Trust) has a current, enforceable right to that ownership interest. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [elements of breach of contract including existence of enforceable contract]; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [elements of fraud include a misrepresentation].)  To defeat those claims on summary judgment, Constance must show that the undisputed facts establish that Wolfgang (and, by extension, the Buettner Trust) have no such right.  As framed by the parties, the existence of this right turns on (1) whether the statute of frauds bars enforcement of any agreement between Wolfgang and Constance, and (2) the terms of that agreement.

## I.     Statute of Frauds

The statute of frauds provides that any agreement for "the sale of real property, or of an interest therein" is invalid unless it is "in writing, subscribed by the party sought to be charged." (Civ. Code, § 1624, subd. (a)(3).)  "To satisfy the 'writing'

---

[4]     Because Crede's "common count" claim seeks the same relief as his breach of contract claim, we need not address it independently.  (E.g., *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394-395.)

requirement of the statute of frauds, the writing may be cobbled together from various documents [citations], but must still 'identif[y] the subject of the parties' agreement, show[] that they made a contract, and state[] the essential contract terms with reasonable certainty.'" (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 197, quoting *Sterling v. Taylor* (2007) 40 Cal.4th 757, 766.)[5]

In his briefs, Crede argues that Constance's testimony regarding the terms upon which she and Wolfgang orally agreed should be excluded. However, Crede's briefs were unclear why: Was it because that testimony improperly expounded upon the meaning of the agreement embodied in the written receipt, or was it because Constance's testimony itself created a whole new oral agreement? During oral argument, Crede clarified that it is the former—namely, that the written receipt embodies the agreement at issue and that Constance's testimony contradicting that agreement is inadmissible.

So clarified, Crede's statute of frauds-based argument fails. Crede's position that the receipt *is* an agreement means that there is already a writing signed by Constance, which satisfies the statute of frauds. (Civ. Code, § 1624, subd. (a)(3).)

What Crede appears instead to be arguing is that Constance's testimony constitutes inadmissible parol evidence. This argument also fails. The parol evidence rule bars the consideration of "extrinsic evidence" to interpret an "integrated written agreement." (*Riverisland Cold Storage, Inc. v. Fresno-*

---

[5] Because Constance did not raise the issue, we have no occasion to consider the separate question of whether the handwritten receipt that Crede attempts to enforce as a contract satisfies the statute of frauds' requirement of a writing that contains all essential contract terms or otherwise falls into an exception to the statute of frauds.

*Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1174; Code Civ. Proc., § 1856; Civ. Code, § 1625.) By its terms, the parol evidence rule does not apply to written contracts that are *not* "integrated"—that is, to contracts that are not intended by the parties as the "complete," "final," and "exclusive" "expression of their agreement" and its terms. (Code Civ. Proc., § 1856, subd. (b); *Riverisland*, at p. 1174; cf. *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343 [parol evidence rule "does not . . . prohibit the introduction of extrinsic evidence 'to explain the meaning of a written contract'"].) The receipt, while in writing, falls short of being an integrated written agreement.

Thus, the trial court properly considered Constance's declaration in interpreting the agreement.

## II. Terms of the Agreement

It is undisputed that Wolfgang and Constance had an agreement of some sort regarding how they would jointly purchase a new residence from the sale of their prior family homes. As a result, the propriety of summary judgment turns on whether there are any triable issues of fact *as to the terms of that agreement*. Unlike the probate court, we conclude that there are.

On the one hand, there is evidence that Constance and Wolfgang agreed to share *ownership* of the San Pedro home. Constance at one point stated that the survivor would "own" the home. The written receipt also purports to grant Wolfgang "50% of *ownership* of" the San Pedro home. (Italics added.) At oral argument, Constance's attorney indicated that the use of the word "ownership" could connote a transfer of title, although there was no evidence as to *when* such a transfer of title must occur—that is, whether it was to be immediate or upon the sale of the property and/or death of the survivor.

9

On the other hand, there is evidence that Constance and Wolfgang agreed to share *possession* of the San Pedro home, with the survivor owing the heirs of the first to die a repayment of the $550,000 amount plus two-percent interest running from the date of that person's death. This interpretation comes in part from Constance's testimony that "the only condition" to the right of the survivor to stay in the home was repayment of this amount, as well as from the letter that Wolfgang wrote to his brother indicating that he gave $550,000 to Constance so he could "take possession"—but not necessarily ownership—"of 50% of the newly purchased house."

The evidence is therefore disputed on the question of whether Wolfgang's $550,000 contribution was meant to confer (1) *ownership* (at the time he paid the contribution or at some point in the future) or, rather, (2) an immediate right to joint *possession* with a promise to repay the contribution amount at a two-percent interest rate. Ownership and possession are not necessarily the same: Although possession is an "indicia" of "ownership" (Evid. Code, § 637; *Hoffman v. Connell* (1999) 73 Cal.App.4th 1194, 1200), any renter knows that possession is *not* ownership. Where, as here, "the evidence" regarding the terms of a contract "is conflicting or admits of more than one inference," there is a dispute of fact. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141-142; *Harden v. Maybelline Sales Corp.* (1991) 230 Cal.App.3d 1550, 1556; *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) And here, that dispute is material because the viability of Crede's petition turns on whether Wolfgang had merely a right to possession, had a right to ownership at some point in the future, or had an immediate right to ownership (as only an immediate right to

10

ownership would entitle the Buettner Trust to $550,000 *plus any appreciation in the value of the San Pedro home* at this point in time). Although it may be possible to resolve the conflict in the evidence (as Constance urges) as indicating that Wolfgang's "ownership" did not take effect until Constance's death or the sale of the San Pedro home, we must liberally construe the evidence in Crede's favor and resolve any doubts *against* summary judgment and in favor of a jury resolving these ambiguities.

In its rulings granting summary judgment and denying a new trial, the probate court seemed to accept Constance's account of the oral agreement involving joint possession as the sole evidence of the agreement, and the court did not discuss the conflict in the evidence caused by Constance's other accounts of the agreement or by the receipt's explicit reference to joint ownership. Because this conflict presents a triable issue of material fact that precludes summary judgment, the probate court erred.[6]

---

[6] The probate court acted within its discretion in refusing Crede's request to reject Constance's declaration regarding her account of the oral agreement as not credible under Code of Civil Procedure section 437c, subdivision (e). That provision grants trial courts the "*discretion*" whether to reject as not credible "an affidavit or declaration made by an individual who was the sole witness to [a material] fact" when it is "the only proof of [that] fact." (*Ibid.*, italics added.) Crede cites several cases for the proposition that a court is *required* to reject a declaration in such circumstances, but all of the cases rest on hearsay objections inapplicable here (*Fowler v. Security-First National Bank* (1956) 146 Cal.App.2d 37, 45-46, 48-49) or no longer valid after our Legislature's enactment of Evidence Code section 1261 (e.g.,

11

*     *     *

In light of our disposition, we have no need to confront Crede's remaining arguments attacking the summary judgment ruling.

## DISPOSITION

The judgment is reversed.  Crede is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR

---

*Estate of Ballard* (1962) 210 Cal.App.2d 799, 802; *Monsen v. Monsen* (1916) 174 Cal. 97, 103).